| | |
|---|---|
| **From:** | Valerie Valentine |
| **To:** | John Silk |
| **Subject:** | Automobile Acceptance Corporation, Inc. #SUAWS20318-2103 |
| **Date:** | Thursday, December 15, 2022 10:50:48 AM |
| **Attachments:** | Class Cert ORder.pdf |
| | A-O Claim Info.pdf |
| | loss notice 8-8-16.pdf |

Attached is a new claim just received from the agent. The Acord Loss Notice is for the original claim that was submitted to another carrier back in 2016.

The insured's contact info is:

Main contact is Amy Haning in the office at 913-621-0331.  ahaning@creditmotors.com

Owner is Tom Wood, cell 913-915-4008.   cmi1401@yahoo.com

Please send a claim acknowledgement.

Thanks!

Valerie Valentine | Underwriting Assistant/Associate Broker
Cochrane & Company
P. 509-242-4005
F. 800-815-6332
E. vvalentine@cochraneco.com
W. http://www.cochraneco.com



>> Our Policy Is You

This email message and any files transmitted with it are confidential and intended solely for the addressee(s) mentioned above. If you have received this message in error, please notify the sender and immediately delete this message from your email system. Unencrypted email transmission is not guaranteed to be secure or error-free as information may be intercepted or corrupted during transmission. Although reasonable precautions have been taken to ensure no viruses are present in this email, the sender cannot accept responsibility for any loss or damage arising from the use of this email or any files transmitted with it.

EXHIBIT
K



IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

AUTOMOBILE ACCEPTANCE CORP.
                              Plaintiff,

vs.

EUGENE JEROME NICHOLS.
                              Defendant.

Case No.:  15CY-CV07631-01
Division No.:  2

## ORDER FOR CLASS CERTIFICATION

NOW, THEREFORE, on the 7th day of July, 2022, the the parties appeared before the Court by respective counsel and the Court took up for hearing and argument Defendant-Counter Claimant's Motion for Class Certification under Rule 52.08(b)(3) MRCP.   Argument and evidence were received and the Court took the matter under advisement.  On August 9, 2022 this Court entered a docket entry granting the Motion for Class Certification and directing Defendant's counsel to prepare a proposed order thereof and allowing Plaintiff's counsel time to object or comment.  The Court now being full advised, does hereby find and order as follows:

### Procedural History

The relevant procedural and factual background for the purposes of this Order are summarized herein below.

On March 5, 2014,  Defendant-Counterclaimant ("Nichols") executed a Retail Installment Contract and Security Agreement ("RICSA") and an Addendum as part of the agreement and financing for Nichols to purchase a Mitsubishi Galant.  Nichols thereafter defaulted on payment of the purchase price and AAC repossessed the vehicle and sold it.

The Addendum to the RICSA agreement signed by the parties included a provision requiring that "No party shall commence or file an action on any claim arising from or relating to

1

the matters covered by this arbitration agreement in any court of law". The Addendum's

arbitration provisions further states that "any claim arising out of the RICSA …. including" those

"arising from or relating to.." the "repossession or any other action involving the vehicle shall be

subject to Binding Arbitration."[1]

On September 21, 2015, AAC filed a petition with this Court seeking to recover the

deficiency balance due from Defendant-Counterclaimant ("Nichols") following the repossession

and sale of a vehicle.   At Plaintiff's request, the cause was thereafter transferred on a change of

venue to Clay County, Missouri.

On April 14, 2016, Nichols filed his Answer and Counterclaim asserting the AAC

violated the notice requirements of §§408.554 through and 408.557 RSMO. notice requirements

and §§408.553, 365.145 and §365.150 RSMO. regarding the accrual of interest, and §§400.9-

611, 400.9-614, and §400.9-625 of Missouri's Uniform Commercial Code regarding required

notices to Nichols.[2]

On June 1, 2016, filed an Amended Petition again asserting its claim for a deficiency

balance due.  On August 8, 2016, Nichols filed his First Amended Answer and Counterclaim to

AAC's petition and therein asserted his Counterclaim for and petition for certification of a class

action realleging the statutory violations herein above and further alleging violations of pre and

post-collateral sale notices and accounting requirements of §§400.9-611, 400.9-613; 9-614; 9-

616 and §400.9-623 RSMo.  Nichols further therein asserted counterclaims on behalf of  himself

---

[1] On May 31, 2017, this Court entered an order in this action analyzing and interpreting the parties' agreements within the RICSA and Addendum regarding arbitration.  For the purposes of brevity, the Court does not recite the provisions of these agreements in full and does not recite its prior findings and conclusions.

[2] In the May 31, 2017 Order, this Court previously determined that Missouri Law applies to this dispute because both AAC and Nichols invoked Missouri Law in their claims and counter-claims at the outset of this litigation.

and all persons similarly situated and seeking to certify the action as a class action under Rule 52.08 MRCP.

On January 11, 2017, AAC filed a motion to stay the action it had initiated and to compel arbitration of the claims raised in Nichols' Amended Counterclaims. AAC argued at that time that that this Court "must determine whether a valid arbitration agreement exists and, if so, whether the parties' dispute falls within the scope of the arbitration agreement." AAC's motion to compel arbitration asked this Court to decide the enforceability and arbitrability of Nichols asserted claims for both himself and the class of persons who sought to represent.

On May 31, 2017, this Court entered an order denying AAC's motion to compel arbitration upon concluding that the RICSA and Addendum thereto lacked consideration and that AAC had otherwise waived its right to arbitration. This cause then proceeded with discovery upon the parties' claims and with regard to class certification. Seventeen months later, on November 14, 2018, AAC filed a renewed motion to compel arbitration of Nichols' counterclaims. Although AAC had previously asked this Court to determine the validity, scope and waiver issues regarding the parties' arbitration agreement, AAC's renewed motion argued that these issues were for the arbitrator to decide and not this Court. On May 7, 2019, this Court denied AAC's renewed motion to arbitrate and the Missouri Court of Appeals affirmed this Court's order on May 12, 2020. *Automobile Acceptance Corp. v. Eugene J. Nichols, W.D. 82803 Per Curiam Order.*

This is a class action about form notices and uniform business practices, substantially similar to the case of *State ex rel. Gen. Credit Acceptance Co., LLC v. Vincent*, 570 S.W.3d 42, 47 (Mo. banc 2019) (hereinafter referred to as "*GCAC*"). A central aspect of Nichols's class action is a determination of whether Plaintiff ("AAC") violated statutory provisions governing its

3

form pre and post-sale UCC notices. Nichols seeks, for himself and the class, statutory penalty damages provided by the UCC or §400.9-625 RSMo.

## ORDERS FOR CLASS CERTIFICATION

1.     The Court finds that Nichols' counterclaims are proper for class certification and Nichols' Motion for Class Certifications is GRANTED.

### Class Definition

2.     **The Certified Class**:  Under Rule 52.08(b)(2) MRCP, the class of persons Nichols shall represent shall be comprised of:

(a).  All persons who are residents and to whom AAC mailed the form pre-sale notice that was also mailed to Plaintiff;

(b).  All persons who are residents and to whom AAC mailed the form post-sale notice that was also mailed to Plaintiff;

3.     **Persons Excluded from the Class**:  The following persons, however, shall be excluded from the class definition:

(a).  all persons whom AAC has obtained a final deficiency judgment against;

(b).  all persons who filed for bankruptcy after the date on their pre-sale notice and whose bankruptcy ended in discharge rather than dismissal;

(c).  all persons to whom AAC issued its form pre-sale, or post-sale notices prior to the date of August 6, 2008.

### FINDINGS OF FACT

4.     It is undisputed that Nichols obtained financing through AAC for the purchase of a motor vehicle and that the motor vehicle is a consumer good regulated by Missouri's statutorily adopted UCC.

4

5.      AAC took possession of the motor vehicle and mailed a form pre-sale notice to Nichols advising him of its intent to dispose of the vehicle in purported compliance with the UCC.   Nichols alleges that the pre-sale notice was defective or in violation of the UCC.

6.      Nichols did not redeem the vehicle.  AAC sold the vehicle and mailed Nichols a form post-sale notice explaining how it calculated the deficiency balance.  Nichols alleges that the post-sale notice was defective or in violation of the UCC.

7.      The form UCC notices mailed to each class member were either in the same form as  the UCC notices mailed to Nichols or share at least one of the same alleged defects in the UCC notices mailed to Nichols as specifically described in Nichols' First Amended Counter-Claims.

8.      The parties disagree on the exact number of class members.  Even so, the available evidence and information provided to the Court establishes that the parties at a minimum agree, and the Court finds, there are at least *hundreds* of persons that fit the class definition.

## CONCLUSIONS OF LAW

Rule 52.08 MRCP governs certification of a class action and "creates a categorical rule entitling a [party] whose suit meets the specified criteria to pursue [his] claim as a class action." *Shady Grove Orthopedic Associates v. Allstate Ins.*, 130 S. Ct. 1431, 1438 (2010); *Green v. Weber, Inc.*, 254 S.W.3d 874, 877 (Mo. banc 2008) (If the perquisites are met, "the court will certify a class"). The Rule 52.08(a) requirements "are commonly referred to as numerosity, commonality, typicality, and adequacy." *Hope v. Nissan North America, Inc.*, 353 S.W.3d 68, 74 (Mo. App. W.D. 2011). "If these four prerequisites are met, the court will certify a class if plaintiff also shows that the class falls within one of the categories set out in Rule 52.08(b)." *Green*, 254 S.W.3d at 877.

5

Nichols seeks class certification under Rule 52.08(b)(3) MRACP. This Rule "allows a lawsuit to proceed as a class action if the court finds that common questions of law or fact 'predominate over any questions affecting only individual members' [predominance] and that 'a class action is superior to other available methods for the fair and efficient adjudication of the controversy [superiority].'" *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 379 (Mo. App. E.D. 2005).

At this stage, the Court is not ruling upon the substance of class action claims. To determine whether class action requirements are met, the allegations in Nichols's counterclaim are accepted as true. *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 227 (Mo. App. W.D. 2007). This is because "[a] class certification hearing is a procedural matter in which the sole issue is whether plaintiff has met the requirements for a class action." *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712, 715 (Mo. banc 2007). "[A]rguments which tend to negate allegations from the petition should be ignored because such allegations are taken as true for purposes of a class certification motion." *Hope, supra,* 353 S.W.3d at 74; citing Hale, supra, at 227. "Therefore, the determination of class certification is based **primarily upon the allegations in the petition.**" *Id.* (emphasis added).

"Determination of whether an action should proceed as a class action under Rule 52.08 ultimately rests within the sound discretion of the trial court." *Hope*, 353 S.W.3d at 73. The "underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered." *State ex rel. Gen. Credit Acceptance Co., LLC v. Vincent*, 570 S.W.3d 42, at 46–47 (Mo banc 2019) (hereinafter *"GCAC"*); citing *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 860-61 (Mo. banc 2008).

In Missouri, when a Court is engaged "[i]n determining whether to certify a proposed class, a court should err in favor of, and not against, allowing maintenance of the class action because class certification is subject to later modification." *Frank v. Enviro-Tech Servs.*, 577 S.W.3d 163, 167 (Mo. App. E.D. 2019); *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 164 (Mo. App. W.D. 2006). The Court therefore has analyzed the requirements of numerosity, commonality, typicality, and adequacy while mindful of this preferred method applied by Missouri Courts.

**Numerosity**:  Rule 52.08(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Mo. R. Civ. P. 52.08(a)(1). The record shows the potential class members will number at least in the hundreds and there is significant likelihood that the class could be in the thousands. Missouri Courts have previously held that the numerosity requirement can be met with a modest number of class members. See *Frank,* supra, 577 S.W.3d at 168 ("our Court has said that generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the numerosity requirement has been met"); and see *Dale, supra,* 204 S.W.3d at168 (noting classes with 18, 19, 25, and 29 members was enough). "To support a finding of the numerosity prerequisite of Rule 52.08(a)(1), the trial court can accept 'common sense assumptions.'" *Id.; Dale,* 204 S.W.3d at 167. Plaintiff in its brief submitted the affidavit and statistical report[3] of its expert, Peter Karutz. The report identified review of both a large and small statistical sample of AAC customer accounts and identified differing "net potential Missouri Class" member sets of 277 and 431. As Mr. Karutz was admittedly analyzing statistical samples of accounts, common sense dictates that there could be far more potential

---

[3] The Court notes that AAC did not provide to the Court any of the underlying records upon which Mr. Karutz relied in making his opinions or creating his statistical report. The Court, however, treats the submitted statements regarding the number of Missouri residents who are potential class members as an admission for purposes of this motion only.

class members based the proposed class definition.  Accordingly, although the parties disagree on the exact number of class members, they do agree the class at least numbers in the hundreds. Class members numbering in the hundreds meets numerosity requirement.

**Commonality**.  The Court finds and concludes that Nichols has met this requirement. Rule 52.08(a)(2) requires only that "there are questions of law or fact common to the class." A single common issue may satisfy this requirement if it is an overriding issue in the litigation. *Dale*, 204 S.W.3d at 175 ("a single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."). The common issue "need not be dispositive of the controversy or even be determinative of the liability issues involved." *Id. GCAC* noted:

> As to liability, however, the class claims are based on an interpretation of the form UCC notices regarding the right to cure the default and rights to [pre-sale] and post-sale notice of disposition of the collateral. **A central aspect of Weatherspoon's putative class action is a determination of whether GCAC violated any statutory provisions governing its form UCC notices. Claims involving the interpretation of form contracts often present a "classic case for treatment as a class action."** [internal citation and quotation omitted]. GCAC has not established the circuit court abused its discretion by concluding common liability issues predominate.
>
> *GCAC*, 570 S.W.3d at 47. (emphasis added)

The present case has similar facts to those in *GCAC*, the class claims are based on interpreting the form UCC notices regarding the rights to pre-sale and post-sale notice of disposition of the collateral. A central aspect of Nichols's class action is a determination of whether AAC violated any statutory provisions governing its form UCC notices.  Nichols claims present a classic case for class treatment. If predominance is satisfied, commonality is satisfied because the "common-question-predominance requirement of Rule 52.08(b)(3) is far more demanding than the commonality prerequisite of Rule 52.08(a)(2)." *Dale*, 204 S.W.3d at 175;

*Custom Hair Designs by Sandy v. Cent. Payment Co., LLC,* 984 F.3d 595, 601 (8th Cir. 2020) ("Predominance subsumes the commonality requirement, so both can be analyzed through the lens of predominance."). For this reason, the commonality requirement is satisfied.

**Typicality.** The Court finds and concludes that Nichols has met this requirement. Rule 52.08(a)(3) requires "the claims … of the representative parties are typical of the claims … of the class." The Supreme Court explained to "satisfy the typicality requirement, the class representative 'must be a part of the class and possess the same interest and suffer the same injury as the class members.'" *GCAC*, 570 S.W.3d at 47. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Dale*, 204 S.W.3d at 169.

Nichols fits the class definition and thus he is "a part of the class". "It is axiomatic that the lead plaintiff must fit the class definition. See *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013) (a plaintiff cannot represent a class of whom they are not a part."). In the present case, AAC mailed Nichols pre-sale and post-sale notices, therefore he fits the class definition. AAC has no deficiency judgment against Nichols and he didn't file for bankruptcy, so he isn't a person to be excluded from the class definition.

Nichols also "possess[es] the same interest and suffer[ed] the same injury as the class members." *GCAC*, 570 S.W.3d at 47. As pled in his counter-claims, Nichols received pre-sale and post-sale form notices that violated the applicable UCC statutes and he seeks recovery of the statutory damages under §400.9-625 RSMO, prejudgment interest, injunctive relief, and attorney's fees. Typicality is satisfied, when all the claims arise from the same event or course of conduct of the defendant and provide the same legal or remedial theory. See *Elsea v. U.S. Eng'g Co.*, 463 S.W.3d 409, 420 (Mo. App. W.D. 2015) (finding the trial court abused its

9

discretion in finding that the typicality requirement was not met" because the court "fail[ed] to recognize that *all* of the claims arise from the same event or course of conduct of the *defendant*."). Nichols' claims arise from the same event or course of conduct of AAC affecting the potential class members to wit: the mailing of form notices regarding rights to pre-sale and post-sale notice of disposition of the collateral that violated the UCC requirements. Moreover, both Nichols and the class members will seek the same legal remedies of statutory damages under §400.9-625 RSMO, prejudgment interest, injunctive relief, and attorney's fees.

AAC made various arguments to suggest typicality wasn't satisfied but the Court is unpersuaded at this stage. All the defined class members have the same transaction and same form notices at issue, along with the same statutory damages claims. AAC offered the affidavit of Mr. Karutz containing his opinion regarding differences in the potential class member samplings he reviewed. Again, the underlying records upon which he relied and prepared his report were not offered in evidence. The Court as the trier of fact may believe or disbelieve any, all or none of a witness's testimony. The same holds true with expert witnesses. *Winchester v. Charter Commc'ns, Inc.*, 2022 WL 2920538, at *16 (Mo. App. E.D. July 26, 2022) (holding that the trial court could disbelieve and not accept defendant's expert - 'a trier of fact is free to believe any, all, or none of a witness's testimony.'"). The commonality and typicality of the claim before this Court with that of those within the class definition is sufficient enough to meet this factor. As of the date of this order, Nichols claims for violations of the UCC within AAC's form pre and post-sale notices is typical of the claims of the class members.

**Adequacy.** Rule 52.08(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Rule 52.08(a)(4). The adequacy requirement "applies both to the named class representatives and to class counsel." *Vandyne v. Allied Mortg.*

*Capital Corp.,* 242 S.W.3d 695, 698 (Mo. banc 2008). "In determining whether the adequacy prerequisite is satisfied as to a class representative, the circuit court must consider whether the named representative has, or may develop during the course of litigation, any conflicts of interest that will adversely affect the interests of the class." *Id.* "But perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. To forestall class certification the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020).

AAC claims Nichols's interest in this claim conflicts with class members' interests because some class members might successfully raise other claims individually that are not pursued by the Class. At this stage, AAC's argument is hypothetical and class members are free to opt out of the class to pursue additional or different claims under Rule 52.08(c). Moreover, given the relevant time periods under this action, a large number of class members are going be barred by the statute of limitations from arising additional claims. It is further important to note that most identified class members are likely to be unaware that AAC violated the UCC notice requirements as alleged in this claim. Class members would also receive notice of the types of damages and claims pursued and their option to proceed individually or separately if they wish to pursue other claims. Nichols correctly argues that "conflicts that are merely speculative or hypothetical will not affect the adequacy inquiry." *1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.).* This Court finds granting class certification is more likely to benefit, and not likely to harm, the interests of the putative class members.

Similarly, Nichols has no interests antagonistic to the other class members and the Court finds AAC's suggestions otherwise to be without merit. The interests of Nichols and the class

11

members are aligned, if not mostly identical. Resolution of questions favorable to Nichols's claim will be favorable to the class; Nichols and the class seek the same form of relief for the same alleged conduct. The class has a "shared interest in establishing [AAC's] liability," and there are no class conflicts "so substantial as to overbalance the common interests of the class members as a whole." *Vogt*, 963 F.3d at 768. It is also noted that both Nichols' counsel and AAC's counsel are very experienced with regard to Class Actions and the subject matter of the class claims and defenses, therefore, all parties will be benefited by experienced counsel. The Court finds that the requirement of adequacy is satisfied.

**Predominance.** Rule 52.08(b)(3) requires the Court to find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." The predominance requirement doesn't "demand that every single issue in the case be common to all the class members.... The predominate issues need not be dispositive of the controversy or even be determinative of the liability issues involved. Common questions of law or fact may be overriding, despite the fact that the suit also entails numerous individual questions." *Hootselle v. Missouri Dep't of Corr.*, 624 S.W.3d 123, 134 (Mo. banc 2021). The Supreme Court held cases like this satisfy the predominance requirement because "common liability issues predominate[.]" *GCAC*, 570 S.W.3d at 47. In the present case, the dominating legal question is whether AAC's UCC notices violated statute and the nature of the damages for all potential class members is statutory damages. These facts create a common liability issue that predominates.

AAC also argues predominance fails because Missouri law applies to some class members' claims while some class members' claims arise under Kansas law. The Court disagrees and finds *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483 (W.D. Mo.

12

2010) persuasive. The *Hopkins* court rejected the same predominance argument raised by AAC here because "there is little or no difference between the Uniform Commercial Codes of the previously mentioned states," including Missouri and Kansas. *Id.* at 488 n.6; *see also State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 601 (Mo. banc 2012) ("[M]ere existence of state law variations is not alone sufficient to preclude class certification."). AAC has not shown this Court any significant difference in the Missouri or Kansas UCC with regard to the pre and post-sale notices or statutory remedies for violations thereof. The predominance requirement is sufficient to support certification of the class.

**Superiority.** Rule 52.08(b)(3) also requires the Court to find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 52.08(b)(3) lists four superiority factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management of a class action.

The Court finds these factors all support class certification. A class action is superior to hundreds, or more, of individual actions involving the same form documents and uniform business practices. There was no credible evidence before this Court that any potential class members have pending claims (whether in litigation or arbitration) seeking resolution of the alleged UCC violations in separate cases. Absent a class action, there is little likelihood class members will know they have any claims against AAC like the claims being advanced. The class

action device provides an effective procedural tool for advancing and enforcing the important public policy considerations underlying the UCC statutes invoked by Nichols whose notice requirements are intended to protect consumers.

"The primary focus of the superiority analysis is the efficiency of the class action over other available methods of adjudication. The analysis permits consideration of the improbability that large numbers of class members would possess the initiative to litigate individually." *Hootselle*, 624 S.W.3d at 134. As in *Hootselle*, the superiority requirement is met because the alternative to certification would create the need for hundreds, if not more, individual actions to decide identical issues—among consumers that likely lack the resources or initiative to litigate individually.  AAC in comparison, is duly formed corporation whose own expert indicates has engaged in thousands of similar transactions nationally for collection and repossession on auto purchase loans.  AAC is in a position of strength organizationally, likely financially, while the individual class members who have had vehicles surrendered or repossessed are less financially able to individually assert UCC violation claims.  In the present case, the benefits of class adjudication outweigh any potential costs because there is evidence of UCC violations, a right to statutory penalties damages and no indication that such claims are elsewhere pursued individually.  More important, forcing otherwise qualified class members to seek separate cases in this case can result in conflicting and varying adjudications that might establish incompatible standards to govern or guide AAC's conduct for future compliance with the UCC.  .

The pursuit of claims collectively in a class action in a single forum is desirable.  Where the UCC notice provisions are consistent, these class members would be pursuing nearly identical claims based in defective form notices and seek substantially similar damages.  These cases can be managed efficiently during the process to identify persons who are interested in

joining as class claimants, persons who wish to opt out, and persons who would seek separate resolution. Although the underlying records and date produced to Nichols were not before this Court, the claims allegations taken as true and the evidence that was provided indicate that the identification of class members and notices of the action can be effectively managed.

The Court concludes that the superiority factors favor certification of a class action.

**Overbreadth.** The final factor the Court considers is whether the class definition is overbroad. "When class certification is appropriate, Rule 52.08 presupposes a properly defined class that is ascertainable and not overbroad." *GCAC*, 570 S.W.3d at 47. In *GCAC*, the Supreme Court found the class definition overbroad because "approximately 87 percent of individual class members' claims are either precluded by deficiency judgments or have been extinguished in bankruptcy, [so] the vast majority of individual class members have no unresolved claim against GCAC." *Id.* at 50. In *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 862 (Mo. banc 2008), the Supreme Court found the class overbroad when "80 percent of the putative class suffered no injury[.]" *Id.*

In the present case, the class definition excludes persons who have deficiency judgments against them and persons who have taken bankruptcy. Nevertheless, AAC suggests the class definition is overbroad because it fails to exclude: (a) non-Missouri residents; (b) persons whose claims are allegedly time-barred by the statute of limitations; (c) persons who are allegedly subject to existing, valid, enforceable arbitration agreements; and (d) persons whose claims are allegedly "moot" by AAC's claimed "setoff" affirmative defense. The Court finds and concludes that to the extent these categories may exist, they do not render a class member "uninjured" or cause the class member to "have no unresolved claim against" AAC, which is what the Court considers with an overbreadth inquiry. *GCAC*, 570 S.W.3d at 47–50.

15

The Court further notes that AAC's argument that the proposed class should not be certified to include class members nationally is not well taken at this time. A state court can assert personal jurisdiction over plaintiff class members who are nonresidents of the state when certain qualifications are met. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Court held that a Kansas trial court properly asserted personal jurisdiction over non-Kansas residents who held royalty interests in gas leases in eleven states. *Id* at 812. The Supreme Court held that due process requires notice, an opportunity to appear in person or by counsel, an opportunity to "opt out" of the class, and to be adequately represented. *Id.* The court held that a detailed descriptive notice sent by first class mail to each member, with an explanation of the right to opt out, satisfies due process with regard to plaintiff class action suits for money judgments. *Id.* The court specifically limited its holding to money judgment class action lawsuits. *Id.* at 812 n. 3. In the present case, Nichols and the putative class members are seeking a money judgment.

With regard to the statute of limitations. The applicable statute of limitations to a cause of action is tolled for all putative class members upon the filing of a class action suit, even for those members who opt-out in favor of individual actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806 (2018) (citations omitted); *Hyatt Corp. v. Occidental Fire & Cas. Co.*, 801 S.W.2d 382, 389 (Mo. App. W.D. 1990). In this case, Nichols filed his Amended Answer and Counter-Claims seeking class certification on August 8, 2016. August 6, 2008 is the date AAC sent its pre-sale notice on the vehicle at issue to Nichols.[4] The Court has addressed the concern potential for overbreadth with regard to claims that are barred by a statute of limitation by

---

[4] This date is based upon the parties' prior summary judgment briefing and statements of fact in this action.

excluding from the class definition those persons to whom AAC issued its pre and post-sale notices by or before August 6, 2008, or six years prior to the date Nichols filed his.

The Court finds that AAC's overbreadth argument regarding class members who may be subject to an arbitration agreement is not actually an overbreadth argument. Rather, this argument is premature argument regarding whether those individuals have claims that are barred by an arbitration agreement which has not yet been produced. As noted above, this order can further be modified when evidence is produced identifying which class members are subject to arbitration agreements *and* whether this Court's 2017 ruling upon regarding the lack of enforceability of Nichols' agreement with AAC is effective with regard to the class members with identical agreements.

Lastly, to the extent AAC's overbreadth arguments rely on the affidavit of Peter Karutz, those arguments, the Court again notes that the underlying records or date upon which the Karutz affidavit and report were based was not before the Court. The Court further disbelieves and doesn't accept Mr. Karutz's affidavit. This proceeding to certify a putative class is procedural in nature. The Court is not convinced the class is impermissibly overbroad like the classes in *GCAC* or *Coca-Cola*.

**IT IS THEREFORE ORDERED THAT:**

1.      The Motion for Class Certification is granted.

2.      The Court certifies a class comprising:

    a.  All persons who AAC mailed a pre-sale notice or post-sale notice.

    b.  Excluded from the class are persons whom (1) AAC has obtained a final deficiency judgment; or (2) who filed for bankruptcy after the date on their pre-sale notice and whose bankruptcy ended in discharge rather than dismissal; or (3)

17

all persons to whom AAC issued its form pre-sale, or post-sale, of collateral notices prior to the date of August 6, 2008.

3.      Nichols is appointed as the class representative.

4.      Martin L. Daesch, Jesse B. Rochman, and Craig W. Richards are appointed as class counsel.

5.      The parties shall send notice to all members who can be identified through reasonable effort and submit a proposed notice complying with Rule 52.08(c)(3) to the Court for approval. The parties shall submit one joint notice showing each party's position where the parties disagree within 20 days after this Order. If the parties cannot agree on a class administrator, Nichols shall move to appoint a proposed class administrator.

6.      From previous discovery motions, arguments and orders, this Court is informed that AAC possesses all documents necessary to identify the class members and their last known address. In discovery, AAC provided Class Counsel with an Excel spreadsheet (bates labelled AAC-1-084383) providing the names, last known addresses, telephone numbers, social security numbers, and additional "DealPack Data" for potential class member. Within 20 days after this order, AAC must provide Class Counsel an Excel spreadsheet—or update the existing spreadsheet—with all the "DealPack Data" for each person who AAC mailed a pre-sale notice or post-sale notice. For each person AAC suggests is excluded by bankruptcy or judgment, AAC shall note on the Excel spreadsheet the exclusionary category (bankruptcy or judgment), the court location, and case number for the bankruptcy or judgment. The Court will resolve any disputed exclusions for bankruptcy or judgment upon appropriate motion of either party.

**SO ORDERED:**

Date _____9/30/22_____        _____

                                              JUDGE

18



Home ▸ Claims ▸ Claim 049-0000241-2016

## Claims

# Claim 049-0000241-2016

**👤 AUTOMOBILE ACCEPTANCE CORP INC**
1400 STATE AVE, KANSAS CITY, KS 66102-4316

💼 Businessowners (49-571906-00)

| | |
|---|---|
| Status: | **OPEN** |
| Date of Loss: | 08/08/2016 |
| Claimant: | EUGENE NICHOLS |
| | 3rd party |

INSD SUED CUSTOMER FOR DEFINCIARY CLMT ATTY RESUEING AS CLASS ACTION SUIT

Reserve Amount:     **$25,000.00**   view all claim totals

---

🔗 **Attachments**

---

## CLAIM REPRESENTATIVE

SARA SLAYBAUGH
📞 800.617.1470 x57408
slaybaugh.sara@aoins.com

Independence Kansas Claims Branch
PO BOX 1700
INDEPENDENCE, MO 64055-0700

---

Technical Support: 800.346.0346 x51850

session id: 11a5a19f

Contact Us



Terms of Use  •  Privacy Policy

**technology should make your life easier, right?**   **simple human sense**

**Bryan A. Janosik**

| | |
|---|---|
| **From:** | Bryan A. Janosik |
| **Sent:** | Monday, August 08, 2016 3:38 PM |
| **To:** | 'independence.clm@aoins.com' |
| **Subject:** | Credit Motors, Inc.   PO#  49-571-627-01 |
| **Attachments:** | Loss Notice.pdf; E700107-2-63.pdf |

Attached is a loss notice and summons on Auto Acceptance Corp.  Auto Acceptance Corp is the finance company for our insured Credit Motors, Inc.

The manager, Amy Haring, can be reached yet today until 5pm or on Friday August 12th.  She is out of the office Tuesday, Wednesday and Thursday this week.  Please call her ASAP for they are supposed to be in court on the 25th of this month.

Thank you,

*Bryan A. Janosik*

Bryan A. Janosik - President
The Al Janosik Insurance Agency
2300 SW 29th Street. Suite 101
Topeka, KS 66611
Office (785) 235-5554
Fax (785) 235-5521
Cell (785) 845-9095
email: bryan@janosikinsurance.com
www.janosikinsurance.com

# GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM

DATE (MM/DD/YYYY): 8/8/2016

| AGENCY | |
|---|---|
| **AL JANOSIK INSURANCE AGENCY** | |
| **2300 SW 29th St #101** | |
| **Topeka, KS 66611-1739** | |

| INSURED LOCATION CODE | DATE OF LOSS AND TIME | AM / PM |
|---|---|---|

| CARRIER | NAIC CODE |
|---|---|
| **Auto Owners** | |

| POLICY NUMBER |
|---|
| **49-571-627-01** |

CONTACT NAME: **Bryan A. Janosik**
PHONE (A/C, No, Ext): **(785)235-5554**
FAX (A/C, No): **(785)235-5521**
E-MAIL ADDRESS: **bryan@janosikinsurance.com**

| CODE: | SUBCODE: |
|---|---|

AGENCY CUSTOMER ID:

## INSURED

NAME OF INSURED (First, Middle, Last)
**Credit Motors Inc**

INSURED'S MAILING ADDRESS
**Credit Motors, Inc**
**1400 State Ave**
**Kansas City, KS 66102**

| DATE OF BIRTH | FEIN (if applicable) |
|---|---|

PRIMARY PHONE #: ☐ HOME ☐ BUS ☐ CELL
**913- 621-0331 - Amy**
SECONDARY PHONE #: ☐ HOME ☐ BUS ☐ CELL
**913-915-4008 Toms Cell**

PRIMARY E-MAIL ADDRESS: **ahaning@creditmotors.com**
SECONDARY E-MAIL ADDRESS:

## CONTACT    [x] CONTACT INSURED

NAME OF CONTACT (First, Middle, Last)
**Amy Haring - Manager "OR" Tom Wood - Owner**

CONTACT'S MAILING ADDRESS
**Same**

PRIMARY PHONE #: ☐ HOME ☐ BUS ☐ CELL
**913-621-0331 - Amy**
SECONDARY PHONE #: ☐ HOME ☐ BUS ☐ CELL
**913-915-4008 - Toms Cell**

WHEN TO CONTACT
**9am to 6 pm  Mon-Fri**

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

## OCCURRENCE

LOCATION OF OCCURRENCE
STREET: **1400 State Ave**

POLICE OR FIRE DEPARTMENT CONTACTED
**n/a**

CITY, STATE, ZIP: **Kansas City, KS   66102**

REPORT NUMBER

COUNTRY:

**n/a**

DESCRIBE LOCATION OF OCCURRENCE IF NOT AT SPECIFIC STREET ADDRESS:   **n/a**

DESCRIPTION OF OCCURRENCE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
**Insured sued customer for deficiary.  There was a mutual dismissal on the case,**
**then the claimant's attorney is resueing as a class action suit.**

**Note; there were to many details to take note of here in our office.**

**Amy Haring has been the Manager of Credit Motors for over 15 years.  She is caught**
**up on what is actually happening.  She can be reached on August 12th, 2016 for she**
**is currently on vacation for the remaining part of this week.**
**Or, you may call Tom Woods, the owner, if you are needing details prior to the**
**12th.**
**Attached is a petition serving Automobile Acceptance Corp. Auto Acceptance Corp is the**
**finance company for Credit Motors, Inc. who is now being counter sued by the claimant.**

## TYPE OF LIABILITY

PREMISES: INSURED IS   [x] OWNER   ☐ TENANT

TYPE OF PREMISES

OWNER'S NAME & ADDRESS (If not insured)

PRIMARY PHONE #: ☐ HOME ☐ BUS ☐ CELL
SECONDARY PHONE #: ☐ HOME ☐ BUS ☐ CELL

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

PRODUCTS: INSURED IS   ☐ MANUFACTURER   ☐ VENDOR

TYPE OF PRODUCT

MANUFACTURER'S NAME & ADDRESS (If not insured)

PRIMARY PHONE #: ☐ HOME ☐ BUS ☐ CELL
SECONDARY PHONE #: ☐ HOME ☐ BUS ☐ CELL

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

WHERE CAN PRODUCT BE SEEN?

The ACORD name and logo are registered marks of ACORD

**INJURED / PROPERTY DAMAGED**

| NAME & ADDRESS (Injured/Owner) | EMPLOYER'S NAME & ADDRESS |
|---|---|
| | |

| PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |

**PRIMARY E-MAIL ADDRESS:** | **PRIMARY E-MAIL ADDRESS:**

**SECONDARY E-MAIL ADDRESS:** | **SECONDARY E-MAIL ADDRESS:**

| AGE | SEX | OCCUPATION | DESCRIBE INJURY |
|---|---|---|---|
| | | | |

| WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|
| | |

| DESCRIBE PROPERTY (Type, model, etc.) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? |
|---|---|---|
| | | |

**WITNESSES**

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|
| | PRIMARY E-MAIL ADDRESS: | | | |
| | SECONDARY E-MAIL ADDRESS: | | | |

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|
| | PRIMARY E-MAIL ADDRESS: | | | |
| | SECONDARY E-MAIL ADDRESS: | | | |

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|
| | PRIMARY E-MAIL ADDRESS: | | | |
| | SECONDARY E-MAIL ADDRESS: | | | |

**REMARKS (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| REPORTED BY | REPORTED TO |
|---|---|
| **Amy Haring** | **Bryan Janosik - Agent** |

AGENCY CUSTOMER ID:

## APPLICABLE IN ALABAMA

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

## APPLICABLE IN ALASKA

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

## APPLICABLE IN ARIZONA

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

## APPLICABLE IN ARKANSAS, DELAWARE, KENTUCKY, LOUISIANA, MAINE, MICHIGAN, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH DAKOTA, PENNSYLVANIA, RHODE ISLAND, SOUTH DAKOTA, TENNESSEE, TEXAS, VIRGINIA, AND WEST VIRGINIA

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties.  In LA, ME, TN, and VA, insurance benefits may also be denied.

## APPLICABLE IN CALIFORNIA

For your protection, California law requires the following to appear on this form:  Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

## APPLICABLE IN COLORADO

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

## APPLICABLE IN THE DISTRICT OF COLUMBIA

Warning:  It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person.  Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

## APPLICABLE IN FLORIDA

Pursuant to S. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in S. 775.082, S. 775.083, or S. 775.084, Florida Statutes.

## APPLICABLE IN HAWAII

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

## APPLICABLE IN IDAHO

Any person who knowingly and with the intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## APPLICABLE IN INDIANA

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

AGENCY CUSTOMER ID:

### APPLICABLE IN KANSAS

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### APPLICABLE IN MARYLAND

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### APPLICABLE IN MINNESOTA

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### APPLICABLE IN NEVADA

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

### APPLICABLE IN NEW HAMPSHIRE

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### APPLICABLE IN OHIO

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### APPLICABLE IN OKLAHOMA

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN WASHINGTON

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

Amended
Filed Counterclaim

Eugene Jerome Nichols



*E700107-2-63*

# IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI
## ASSOCIATE DIVISION

Automobile Acceptance Corp.,

      Plaintiff/Counterclaim-Defendant,

v.

Eugene Jerome Nichols,

      Defendant/Counterclaim-Plaintiff.

Case No. 15CY-CV07631
Division: 9

### First Amended
### Answer and Counterclaim to Amended Petition

Defendant/Counterclaim-Plaintiff, through the undersigned attorneys, answers Plaintiff's Amended Petition for Deficiency Judgment and counterclaims against Plaintiff:

### Answer

1.     Defendant is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore denies same.

2.     Defendant is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore denies same.

3.     Defendant admits Plaintiff accelerated the maturity of all unpaid installments, but otherwise is without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations in this Paragraph, and therefore denies same.

4.     Defendant admits Plaintiff repossessed and sold the collateral. Defendant admits Plaintiff's form presale notice addressed to Defendant is attached to its Amended Petition, but denies the remaining allegations of this Paragraph.

5.     Defendant admits Plaintiff's form post-sale notice addressed to Defendant is attached to its Amended Petition, but denies the remaining allegations of this Paragraph.

1

6.      Denied.

WHEREFORE, having fully answered Plaintiff's Amended Petition for Deficiency Judgment, Defendant prays for an order dismissing all claims against Defendant with prejudice and costs expended taxed to Plaintiff; and awarding all other relief as the Court deems just or necessary under the circumstances.

## Affirmative Defenses

1.      Plaintiff's Amended Petition for Deficiency Judgment fails to state a claim upon which relief can be granted because Plaintiff has failed to plead facts sufficient to show compliance with sections 400.9-601 to 400.9-629, RSMo., as required by sections 408.556.1 and 408.557, RSMo. Defendant has moved to dismiss concurrently with his answer and incorporates that motion to dismiss by this reference.

2.      Plaintiff's Amended Petition for Deficiency Judgment is barred by the absolute bar rule because Plaintiff did not strictly comply with the Uniform Commercial Code, including sections 400.9-601 to 400.9-629, RSMo.

3.      Plaintiff's Amended Petition for Deficiency Judgment is barred as set forth in the counterclaim below, which is incorporated by this reference.

4.      Plaintiff's claim is usurious under RSMo. § 408.060 because Defendant has been charged interest and fees in excess of the legal rate.

5.      Plaintiff is barred by accord and satisfaction because the total amount paid on the account is equal to or greater than the total principal charged on the account.

6.      Plaintiff is barred by laches, unclean hands, setoff and estoppel.

7.     Plaintiff is a foreign corporation transacting business in Missouri without a certificate of authority and may not maintain a proceeding in this Court until it obtains a certificate of authority under section 351.574.

---

# Counterclaim
## Nature of Case

1.     This is a consumer class action against Automobile Acceptance Corp. ("AAC"), and its predecessors or successors, seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by AAC regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies.

2.     AAC violated section 408.553 by charging interest during the time after Nichols' and numerous other Missouri consumers' alleged defaults and before AAC obtained deficiency judgments against them.

3.     AAC sent Nichols and many other consumers a presale notice, which did not comply with the Uniform Commercial Code ("UCC") adopted by each state.[1] AAC's form presale notice is attached to AAC's Amended Petition with the title "Notice of Repossession and Intent to Sell or Dispose of Collateral."

4.     AAC sent Nichols and numerous other consumers a post-sale notice, which did not comply with the UCC. AAC's form post-sale notice is attached to AAC's Amended Petition with the title "Notice of Sale of Collateral and Deficiency (or Surplus Due)."

---

[1]     Nichols cites to the sections of the official text of the UCC. The sections of the UCC cited by Nichols have been adopted by all 50 states with no material variation that would affect the claims of the putative class members, regardless of where the putative class member resides, the loan originated, or the repossession took place. Article 9 of the UCC has been adopted in Missouri at § 400.9-101, *et seq*. Missouri's statutory scheme for its version of the UCC adds the prefix of 400 to the UCC numbering scheme. For example, § 9-614 of the UCC is denominated § 400.9-614 in Missouri's statutes.

5.      Nichols sues individually and for all other similarly situated consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

### Parties

6.      Nichols is a resident of Clay County, Missouri.

7.      AAC is a Kansas for profit corporation that is not registered to do business in Missouri.

8.      All allegations of acts or omissions by AAC include, but are not limited to, acts and omissions of AAC's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were made with AAC's express and/or implied authority, or were ratified or otherwise approved by AAC; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as AAC's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

### Jurisdiction and Venue

9.      This is a civil case, so this Court has subject-matter jurisdiction.

10.     This counterclaim independently exceeds the jurisdiction of cases triable under Chapter 517, and must be certified for assignment by the presiding judge of the circuit or in accordance with local rules under section 517.081.

11.     Venue is proper in Clay County, Missouri because the sole defendant is a resident of Clay County, Missouri. Venue is also proper in this Court under Rule 55.32 because Nichols is counterclaiming on AAC's Petition originally brought in Clay County, Missouri.

### General Allegations

12.     Nichols signed a consumer credit contract for the purchase of a motor vehicle ("Property").

13.     The Property was bought for use primarily for personal, family or household purposes.

14.     The consumer credit contract was for the sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payable in one or more deferred installments

15.     Nichols and each class member were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

16.     AAC never obtained Nichols' written consent to repossess the Property.

17.     AAC never obtained the written consent from the members of the Missouri Subclass (defined below) to repossess their property.

18.     After repossessing the Property, AAC sent a presale notice to Nichols and the Class, advising of AAC's intent to dispose of their property in purported compliance with the UCC.

19.     The presale notices sent to Nichols and the Class (defined below) were not reasonable as required by § 9-611(b) because, among other reasons, they failed to:

a.     State the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting as required by §§ 9-614(1)(A) and 9-613(1)(D).

b.     Provide a telephone number from which the amount that must be paid to the secured party to redeem the collateral under § 9-623 is available as required by § 9-614(1)(C).

5

      c.     Provide a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available as required by § 9-614(1)(D).

      d.     Accurately state the date of disposition.

20.    The presale notices sent to Nichols and the Missouri Subclass (defined below) were not reasonable as required by § 400.9-611(b) because the presale notices were misleading by stating the payoff balance included interest of 0.05% per day from the date of the presale notice.

21.    AAC failed to send Nichols and the classes reasonable authenticated notices of disposition as required by § 9-611.

22.    AAC or someone at AAC's direction disposed of the Property ("Disposition") after sending the presale notice.

23.    After Disposition, AAC or someone at AAC's direction sent post-sale notices to Nichols and each member of the Class explaining how it calculated their deficiency balances.

24.    AAC's post-sale notices to Nichols and the Class failed to comply with § 9-616 because the notices:

      a.     Did not provide all the information, in the requisite order, as required by § 9-616(c)(3).

      b.     Did not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 9-616(a)(1)(C).

25.    AAC's post-sale notices to Nichols and the Missouri Subclass failed to comply with § 9-616 because the notices misstated the aggregate amount of obligation (as required by § 400.9-

616(c)(1)) and the amount of the deficiency (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances or interest that had not become due.

26.     Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the amount of the surplus or deficiency for Nichols and the Class.

27.     AAC's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

28.     AAC sued Nichols and the Missouri Subclass without giving the notice required by RSMo § 408.557.

29.     AAC's deficiency actions against Nichols and the Class sought interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

30.     AAC's deficiency judgments against many members of the Class included interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

31.     AAC or someone at AAC's direction has unlawfully collected or attempted to collect interest accruing after default and before judgment from Nichols and Missouri consumers.

32.     AAC or someone at AAC's direction has unlawfully collected or attempted to collect deficiency balances from Nichols and other consumers issued defective presale and post-sale notices.

33.     AAC or someone at AAC's direction has unlawfully collected or attempted to collect the time price differential, delinquency and collection charges from Nichols and other Missouri consumers issued defective presale and post-sale notices.

7

34.     AAC has maintained a practice and policy of reporting derogatory information regarding the class members to local consumer reporting agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collectively, "CRAs"), despite its failure to comply with the presale and post-sale notice requirements.

35.     The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

36.     The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.

37.     The defective presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the class members' privacy rights.

### Class Allegations

38.     Nichols counterclaims individually and for classes designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

39.     The Class comprises all persons ("Class") within the applicable statute of limitations:

    a.  who are named as borrowers or buyers on a loan or financing agreement with AAC, assigned to AAC or owned by AAC;

    b.  whose loan or financing agreement was secured by collateral;

    c.  whose collateral was repossessed, voluntarily or involuntarily; and

       d.  whose collateral was disposed.

40.    Alternatively, the Class comprises all persons ("Class") within the applicable statute of limitations:

       a.  who AAC failed to send a presale notice; or

       b.  who AAC sent a presale notice with one of the alleged defects in the presale notice sent to Nichols.

41.    The Missouri Subclass comprises all persons within the Class ("Missouri Subclass"):

       a.  who obtained a Missouri Certificate of Title for a motor vehicle identifying AAC as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with AAC, assigned to AAC or owned by AAC;

       b.  whose loan or financing agreement was secured by a motor vehicle or other collateral;

       c.  whose motor vehicle or other collateral was repossessed, involuntarily or voluntarily; and

       d.  whose motor vehicle or other collateral was disposed.

42.    Alternatively, the Missouri Subclass comprises all persons within the Class ("Missouri Subclass") who obtained a Missouri Certificate of Title for a motor vehicle identifying AAC as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with AAC, assigned to AAC or owned by AAC; and:

       a.  who AAC failed to send a presale notice;

    c.   who AAC sent a presale with one of the alleged defects in the presale notice sent to Nichols;

    d.   who AAC failed to send a post-sale notice; or

    e.   who AAC sent a post-sale notice after disposing the collateral or receiving insurance proceeds for the same.

**43.** Members of the classes are so numerous their individual joinder is impracticable. Nichols is informed and believes the proposed classes each contain over 40 individuals who had their motor vehicles or other collateral repossessed, involuntarily or voluntarily, and disposed. The classes are sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown.

44. There are questions of law and fact common to the classes, which predominate over any issues involving individual class members.

45. The principal legal question common to Nichols and each class member is whether the presale and post-sale notices sent by AAC, or someone at its direction, complied with the UCC.

46. The principal legal question common to Nichols and each Missouri Subclass member is whether RSMo § 408.553 precludes interest from accruing after default until a judgment is obtained, and if so, whether the presale and post-sale notices are defective by including or discussing interest AAC was precluded from charging.

47. Nichols' claims are typical of the claims of the class members.

48. Nichols' and the classes' claims are based on the same factual and legal theories.

49. Nichols' and the Class's rights derive from written, form contracts and a uniform statute adopted by all 50 states with no material variation for the claims asserted here.

50. All presale notices sent to the Class violated the UCC in at least one of the ways that Nichols' presale notice violated the UCC.

51. The violations alleged by Nichols and the Class derive from written, form presale and post-sale notices that violate the UCC adopted by each state.

52. The violations alleged by Nichols and the Missouri Subclass derive from written, form presale and post-sale notices that violate RSMo § 408.553 and the UCC.

53. Nichols and each class member were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to AAC's failure to provide proper presale notices and post-sale notices.

54. Nichols will fairly and adequately represent and protect the interests of the classes.

55. Nichols has no interests antagonistic to the class members.

56. Nichols' counsel is competent and experienced in consumer and class litigation.

57. Nichols and all class members have an interest in determining the adequacy of the presale notices and post-sale notices sent by AAC and to recover damages due to the statutorily defective presale notices and post-sale notices.

58. The questions of law or fact common to the classes predominate over questions affecting only individual members.

59. Nichols and each class member will rely on the same basic evidence (i.e., the form notices).

60. Determining the deficiency of the presale notices and post-sale notices resolves all class members' claims because each notice sent to the class members suffers from at least one of the same deficiencies as Nichols' notices.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

62.     The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

63.     Most class members are probably unaware AAC violated their rights and the law.

64.     If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

65.     Concentrating the litigation of Nichols' and the class members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

66.     The classes should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

67.     Nichols also seeks a declaration that the form right to cure notices, presale notices and post-sale notices used by AAC violate Missouri or other applicable law.

### Count I – Class's Claim

68.     Nichols repeats the allegations set forth above as if set forth in Count I.

69.     AAC violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by AAC.

70.     AAC did not use the form of notification provided in § 9-614(3) of the UCC when sending presale notices to Nichols and the Class.

71.     AAC's presale notice to Nichols and the Class included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

72.     As required under § 9-611 of the UCC, AAC failed to provide "reasonable authenticated notice of disposition" to Nichols and the Class.

73.     AAC did not send post-sale notices, or any other explanation or writing, to Nichols and the Class providing all the information, in the requisite order, as required by § 9-616 of the UCC.

74.     AAC's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because AAC sent the same noncompliant post-sale notice to Nichols and the Class.

75.     As a direct and proximate result of failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, Nichols and the Class suffered actual damages not less than the minimum damages provided by § 9-625(c)(2), including:

    a.   loss of use of tangible property and cost of alternative transportation;

    b.   loss resulting from the inability to obtain, or increased costs of, alternative financing;

    c.   harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

    d.   harm caused by defamation, slander and libel;

    e.   harm caused by invasion of privacy; and

    f.   other uncertain and hard-to-quantify actual damages.

WHEREFORE, Nichols prays this Court certify the Class and enter a judgment for Nichols and the Class against AAC:

    a.   awarding actual damages not less than the minimum damages provided by § 9-625(c)(2);

13

b.  statutory damages of $500 for each defective post-sale notice sent or that AAC failed to send;

c.  prejudgment and post-judgment interest;

d.  a preliminary and permanent injunction enjoining AAC from engaging in the practices alleged, including without limitation, enjoining AAC from collecting deficiency judgments, time price differential, delinquency and collection charges from Nichols and the Class;

e.  a mandatory injunction compelling AAC to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Nichols and the Class;

f.  a mandatory injunction compelling AAC to remove any adverse credit information wrongfully reported on Nichols' and the Class' consumer credit reports;

g.  a declaration that the presale and post-sale notices sent by AAC to Nichols and the Class fail to comport with the statutory requirements; and

h.  for such other and further relief as this Court deems just and proper.

### Count II – Missouri Subclass' Claim

76.     Nichols repeats the allegations set forth above as if set forth in Count II.

77.     AAC wrongfully charged interest after default but before a final judgment in violation of RSMo § 408.553, which also violates RSMo § 365.145.

78.     AAC's wrongful charge of interest renders the presale notices unreasonable and misleading in violation of RSMo §§ 400.9-611 and 9-614(5).

79.     AAC's wrongful charge of interest renders the post-sale notices unreasonable and misleading in violation of RSMo § 400.9-616 because, among other reasons, it misstates the

amount of the obligation and the deficiency balances owed by including unpaid balances or interest that had not become due.

80.     AAC did not send post-sale notices, or any other explanation or writing, to Nichols and the Missouri Subclass providing all the information, in the requisite order, as required by RSMo § 400.9-616.

81.     AAC's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because AAC sent the same noncompliant post-sale notice to Nichols and the Missouri Subclass.

82.     AAC's failure to provide notices sufficient under RSMo §§ 400.9-611, 9-614 and 9-616 before commencing its claim for a deficiency judgment violates sections §§ 408.556, 408.557, and 365.145.

83.     Under § 365.150.2, AAC's violation of § 365.145 requires it return any time price differential, delinquency or collection charge on the consumer credit contracts that it collected from Nichols and the Missouri Subclass.

84.     As a direct and proximate result of AAC's wrongful acceleration and repossession, and failure to send the requisite notices, Nichols and the Missouri Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

    a.   loss of use of tangible property and cost of alternative transportation;

    b.   loss resulting from the inability to obtain, or increased costs of, alternative financing;

    c.   the surplus after disposition of the collateral that would be equal to the proceeds of disposition less the unaccelerated balance due on the consumer loan contracts and less any wrongfully charged interest;

    d.  all monies paid to AAC by Nichols and the Missouri Subclass for the time price differential and delinquency and collection charges on the consumer credit contracts;

    e.  harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

    f.  harm caused by defamation, slander and libel;

    g.  harm caused by invasion of privacy; and

    h.  other uncertain and hard-to-quantify actual damages.

85.    AAC did not intend to violate RSMo § 408.553 or any of the statutes under the UCC.

86.    Nichols and the Missouri Subclass are entitled to attorney's fees under RSMo § 408.562.

87.    Nichols and the Missouri Subclass are entitled to punitive damages under RSMo § 408.562.

88.    AAC's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of the consumer rights of Nichols and the Missouri Subclass.

WHEREFORE, Nichols prays this Court certify the Missouri Subclass and enter a judgment for Nichols and the Missouri Subclass against AAC:

    a.  awarding actual damages not less than the minimum damages provided by RSMo § 400.9-625(c)(2);

    b.  statutory damages of $500 for each defective post-sale notice sent;

    c.  prejudgment and post-judgment interest;

    d.  attorney's fees;

e.  punitive damages;

f.  a preliminary and permanent injunction enjoining AAC from engaging in the practices alleged, including without limitation, enjoining AAC from collecting deficiency judgments, time price differential, delinquency and collection charges from Nichols and the Missouri Subclass;

g.  a mandatory injunction compelling AAC to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Nichols and the Missouri Subclass;

h.  a mandatory injunction compelling AAC to remove any adverse credit information wrongfully reported on Nichols' and the Missouri Subclass's consumer credit reports;

i.  a declaration that the right to cure, presale, and post-sale notices sent by AAC to Nichols and the Missouri Subclass fail to comport with the statutory requirements; and

j.  for such other and further relief as this Court deems just and proper.

THE ONDER LAW FIRM

By: _____

Martin L. Daesch, #40494
Jesse B. Rochman, #60712
110 E. Lockwood Ave.
St. Louis, MO  63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com

*Attorneys for Defendant/Counterclaim-Plaintiff*

## Certificate of Service

I certify on August 8, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.