## CERTIFICATION

I, Andrew Cannella, Senior Underwriter at Stateside Underwriting Agency, do hereby certify that, upon my information and belief, the attached is a true and correct copy of Policy No. SUA WS20318-2002 issued to Automobile Acceptance Corporation Inc. for the Policy Period March 1, 2020 through March 1, 2021.

Andrew Cannella

Date: 1/12/2023

Sworn to and subscribed before me
this 12 day of January 2023.

Notary Public, State of Illinois
My commission expires: 7-2-2023

OFFICIAL SEAL
JONATHAN D FREEBURG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/02/23

**EXHIBIT**
**M**

UND000053

# Important Information on Your Policy

SUA (Stateside Underwriting Agency, a Division of Johnson & Johnson, Inc.) is pleased to welcome you to our family to for your insurance protection.  SUA works with your broker and performs underwriting services for your broker to provide insurance via Underwriters at Lloyds of London or domestic insurance companies.  The policy attached provides your actual coverage.  This cover page is not designed to give advice other than general advice, and this cover page gives some supplemental helpful information such as:

1. Where to make a claim
2. Some basic loss prevention ideas
3. Employer Guard services available to you as a client (Background Checks at a deep discount)

## Where to Make a Claim?

Your Policy contains on the Declarations Detail Page a Notice of Claim address/information or an endorsement in the policy details where to send a claim.  It is often best to discuss with your insurance agent/broker any claim situation or your attorney, but be cautious not to delay sending in a claim.

## Simple suggestions:
1. Always work with your insurance broker to determine whether you have the correct limits of liability
2. Keep policies secure so those not needing the information cannot access such
3. Always report claims on a timely basis
4. Know how to report a claim
5. Implement Loss Prevention techniques to help reduce risks.  For example, a couple of loss prevention tools include requiring call backs on wire transfers to reduce wire fraud exposure (does not eliminate all exposure) or obtaining background checks on all employees

## The Importance of Employee Background Checks
This fundamental loss prevention tool helps to screen employees, but equally important to not have such done in the modern work environment can create a liability to the employer and individual owners or officers/managers personally if no such check was performed and an employee had a workplace violence issue, sex record history, etc.  SUA is pleased that we have partnered with Intellicorp to provide this service at a deep pricing discount for our clients.  This is available via the employerguard.com website (See the next page for details).

UND000054




# Background Checks
## Ensuring the safety and security of your organization

As a client and Insured, you are entitled to obtain one of the most fundamental risk management tools: Background Checks. Our partner IntelliCorp offers comprehensive and validated screening services to help minimize risk and help you make the best hiring decisions. As an Insured, this service is available to you with large discounts in pricing.

**Visit www.EmployerGuard.com and click "sign up" to get started today.**

**Stateside Underwriting Agency Discounted Background Check Package**

We help deliver a thorough picture of your applicant, so you'll get a full representation of who you're hiring based around your specific requirements.

Package Price: $19.05

Includes:

- Validated Criminal Database
  - Validated Nationwide Sex Offender
  - Validated Department of Corrections
- Unlimited Single County Searches (7 year address history)*
- SSN Verification w/Address History
- Government Sanctions (Terrorist Search)

Note: *Some courts charge a mandatory fee. These are treated as pass-through fees to our clients and are clearly highlighted before processing the search.



**Program Benefits**

- Preferred pricing
- Criminal product validation
- Compliance resources
- Best-in-class client service
- System & product training sessions
- Secure online process

**Package Add-Ons**

- Federal Criminal Searches
- Motor Vehicle Reports
- Employment Verifications
- Education Verifications
- Adverse Action Letters
- Drug Testing
- Credit Reports
- I9/E-Verify

**Contact:**
Intellicorp:
800-539-3714

Employerguard.com



**Sign-Up Today**

Visit  EmployerGuard.com and click "sign up" to get started.

UND000055



# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

Stateside Underwriting Agency
A division of Johnson & Johnson, Inc.
335 Commerce Drive
Crystal Lake, Illinois  60014

**SLC-3 (USA)** NMA 2868 (24/08/2000)
Form approved by Lloyd's Underwriters' Non-Marine Association Limited

UND000056

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

### Short Rate Cancellation Table For Term of One Year.

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A. If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B. If insurance has been in force for more than one year:
1. Determine full annual premium as for insurance written for a term of one year.
2. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.
3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.



One Lime Street London EC3M 7HA

UND000058

This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA 2868)

| Previous No.<br>**SUAWS20318-1901** | Authority Ref. No.<br>B0621PFDO19219 | Certificate No.<br>**SUAWS20318-2002** |
|---|---|---|

1. Name and address of the Insured:

   **AUTOMOBILE ACCEPTANCE CORPORATION INC**
   **1400 STATE AVE**
   **KANSAS CITY, KS 66102**

2. Effective from    March 01, 2020              to          March 01, 2021
   both days at 12:01 a.m. standard time.

3. Insurance is effective with certain **UNDERWRITERS AT LLOYD'S, LONDON.**

4. Amount                            Coverage                              Rate                          Premium

   $1,000,000 / $2,000,000      Mortgage Company Professional Liability                          █████████
   (See Policy for any
   applicable sub-limits)

                                                                POLICY FEE            ████████
                                                                GROSS TOTAL        █████████

5. Forms attached hereto and special conditions:

   A1-WS, A2, A6, A7, A8, A9, A13, A14, A15, A17, A37, A51, A87, A88(A), A110

6. Service of Suit may be made upon:

   Mr. John K. Silk; Karbal, Cohen, Economou, Silk & Dunne, LLC 150 South Wacker Drive, 17th Floor, Chicago, IL 60606

7. In the event of a claim, please notify the following:

   Mr. John K. Silk
   Karbal, Cohen, Economou, Silk & Dunne, LLC 150 South Wacker Drive 17th Floor Chicago, IL 60606

Dated                                                      Stateside Underwriting Agency, A Division of Johnson & Johnson Inc.

       March 03, 2020                                      By _____
                                                                            Correspondent

This policy is issued by an insurer not authorized to do business in Kansas and, as such, the form, financial condition, and rates are not subject to review by the Commissioner of Insurance and the insured is not protected by any guaranty fund.

**UND000059**

## PROFESSIONAL SERVICES LIABILITY POLICY

**THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  CLAIMS EXPENSES REDUCE AND MAY EXHAUST THE COVERAGE LIMITS, AND ARE SUBJECT TO THE RETENTION.**

SUAWS20318-2002
**POLICY NUMBER**

## CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND OTHER LONDON COMPANIES

**DECLARATIONS**

**Item 1.**     Name and Address of Insured:

      **AUTOMOBILE ACCEPTANCE CORPORATION INC**
      **1400 STATE AVE**
      **KANSAS CITY, KS  66102**

      A.   Insured's Profession:   <u>AUTOMOBILE LOAN ORIGINATION; AUTOMOBILE LOAN SERVICING</u>

**Item 2.**     Policy Period          (Month     Day     Year)
        From:          March 1, 2020          To:  March 1, 2021
        12:01 A.M. Local Time at the Address of the Organization as stated in Item 1 above.

**Item 3.**     Limit of Liability (Inclusive of Defense Costs):
        <u>$1,000,000</u> Per Claim Limit
        <u>$2,000,000</u> Aggregate for each Policy Period

**Item 4.**     Retention:  <u>$10,000</u>     each Claim

**Item 5.**     The Premium for this Policy is:  ▮▮▮▮▮▮

**Item 6.**     Retroactive Date:  March 1, 2019

**Item 7.**     Coverage Date:  **March 1, 2019**

**Item 8.**     Notice Pursuant to Article VI:
        Mr. John K. Silk
        Karbal, Cohen, Economou, Silk & Dunne, LLC
        150 South Wacker Drive, 17th Floor
        Chicago, IL 60606

**Item 9.**     Endorsements Attached at Issuance:
        A1-WS, A2, A6, A7, A8, A9, A13, A14, A15, A17, A37, A51, A87, A88(A), A110

Authorized Representative:_____          <u>March 3, 2020</u>
                           Signature                                          Date

# PROFESSIONAL SERVICES LIABILITY POLICY

**THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  CLAIMS EXPENSES REDUCE AND MAY EXHAUST THE COVERAGE LIMITS, AND ARE SUBJECT TO THE RETENTION.**

In consideration of the payment of the premium, reliance by the Company upon the statements made to the Company in the application attached hereto and made a part hereof, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the Company agrees with the **INSURED** as follows:

## I.        INSURING AGREEMENT

The Company will pay on behalf of the **INSURED LOSS** in excess of the Retention stated in Item 4 of the Declarations which the **INSURED** shall become legally obligated to pay as a result of any **CLAIM** first made against the **INSURED** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 of the Declarations.

## II.       DEFENSE AND SETTLEMENT

Subject to Article V.B., the Company shall have the right and duty to defend any **CLAIM** against the **INSURED** to which this insurance applies, even if any of the allegations of the **CLAIM** are groundless, false or fraudulent.

The Company shall have the right to negotiate the settlement of any **CLAIM**, whether within or above the Retention, but the Company shall not commit the **INSURED** to any settlement without the **INSURED'S** consent, such consent not to be unreasonably withheld.  The **INSURED** shall not admit liability for or settle any **CLAIM** or incur any **DEFENSE COSTS**

UND000061

without the written consent of the Company, such consent not to be unreasonably withheld.  If the **INSURED** refuses to consent to any settlement recommended by the Company and agreed to by the claimant, and elects to contest any **CLAIM** or continue any legal proceedings in connection with such **CLAIM**, then, subject to the Limit of Liability of this Policy, the Company's liability for the **CLAIM** shall be limited to the amount in excess of the Retention which the Company would have contributed to the settlement had the **INSURED** consented to such settlement plus the **DEFENSE COSTS** incurred up to the date of such refusal.

## III.    DEFINITIONS

A.    **"INSURED"** means the individual, partnership, corporation or other entity named in Item 1 of the Declarations and shall include all persons who were, are or shall become: 1) directors, officers, partners or employees of the **INSURED** while acting within the scope of their duties as such; and 2) the executors, heirs, legal representatives or assigns of each **INSURED** otherwise insured herein in the event of his or her death, incompetency, insolvency or bankruptcy.

B.    **"WRONGFUL ACT"** means any actual or alleged negligent act, negligent error or negligent omission committed by the **INSURED** solely in the performance of or failure to perform professional services for others in the **INSURED'S** Profession as stated in Item 1.A. of the Declarations.

C.    **"LOSS"** means money damages, settlements, and **DEFENSE COSTS**.  **LOSS** shall not include:

1.    punitive or exemplary damages or the multiplied portion of a multiplied damages award;

2.    criminal or civil fines or penalties imposed by law;

3.    taxes;

UND000062

4.      matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

D.      **"POLICY PERIOD"** means the period from the inception date of this Policy to the expiration date stated in Item 2 of the Declarations, or to any earlier cancellation date of this Policy.

E.      **"DEFENSE COSTS"** means reasonable and necessary legal fees and expenses incurred with the approval of the Company in connection with the investigation, adjustment, settlement, defense or appeal of a **CLAIM** made against an **INSURED** for a **WRONGFUL ACT**, and shall include the cost of attachment or similar bonds.  Payment of **DEFENSE COSTS** by the Company shall reduce, and may exhaust, the Limit of Liability under this Policy.

**"DEFENSE COSTS"** shall not include salaries, wages, fees, overhead, overtime or benefit expenses incurred by or associated with the **INSUREDS**.

F.      **"CLAIM"** means a written demand for money damages received by an **INSURED**, including service of suit and the institution of administrative or arbitration proceedings.

G.      **"INTERRELATED WRONGFUL ACTS"** means **WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions.

H.      **"MONEY LAUNDERING"** means:

(i)      the concealment, or disguise, or conversion, or transfer, or removal of **CRIMINAL PROPERTY** (including concealing or disguising its nature, source, location, disposition, movement or ownership or any rights relating thereto); or

UND000063

(ii)      the entering into or becoming in any way concerned in an arrangement which is known or suspected to facilitate (by whatever means) the acquisition, retention, use or control of **CRIMINAL PROPERTY** by or on behalf of another person; or

(iii)     the acquisition, use or possession of **CRIMINAL PROPERTY**; or

(iv)     any act which constitutes an attempt, conspiracy or incitement to commit any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii); or

(v)      any act which constitutes aiding, abetting, counseling or procuring the commission of any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii).

I.     **"CRIMINAL PROPERTY"** means property which constitutes a benefit obtained from or as a result of or in connection with criminal conduct or represents such a benefit (in whole or part and whether directly or indirectly) which the **INSURED** (or any person or entity acting on their behalf) knows or suspects or reasonably should have known or suspected that it constitutes or represents such a benefit.

J.     **"CRIMINAL CONDUCT"** means conduct which constitutes (or would constitute) an offence in any part of the world.

K.     **"ACT OF TERRORISM"** means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s) committed for political, religious, ideological, or similar purposes, including the intention to influence any government and/or to put the public, or any section of the public, in fear.

## IV.   **EXCLUSIONS**

This Policy does not apply to **LOSS** in connection with any **CLAIM**:

A.      based upon or directly or indirectly arising out of or resulting from an **INSURED** gaining in fact any personal profit or advantage to which the **INSURED** is not legally entitled;

B.      that results in a judgment or final adjudication that any **INSURED** has committed any criminal, dishonest, intentionally malicious, or fraudulent act, error or omission.

However, any **WRONGFUL ACT** pertaining to any of the **INSUREDS** shall not be imputed to any other person for the purposes of determining the applicability of Exclusions A. and B;

C.      based upon or directly or indirectly arising out of or resulting from any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease, or death, including but not limited to loss of consortium or services, or any actual or alleged damage to or loss of or destruction of any tangible property, including loss of use thereof;

D.      brought by or on behalf of one **INSURED** under this Policy against another **INSURED** under this Policy, except where:

      1.      such **CLAIM** arises out of the performance of or failure to perform professional services for the claimant **INSURED** as a client in the **INSURED'S** Profession as stated in Item 1.A. of the Declarations; or

      2.      such **CLAIM** is in the form of a cross claim, third-party claim or otherwise for contribution or indemnity and is part of and results directly from a **CLAIM** which is not otherwise excluded by the terms of this Policy;

E.      based upon or directly or indirectly arising out of or resulting from any actual or alleged activities of an **INSURED** in a fiduciary capacity with respect to any employee benefit

UND000065

or pension plan, or based upon the Employee Retirement Income Security Act of 1974, any and all amendments thereto, any rule, regulation, or order issued pursuant thereto, or any similar provisions of any other federal, state or local statutory law or common law;

      F.     based upon or directly or indirectly arising out of or resulting from:

          1.     any actual or alleged seepage, pollution or contamination of any kind, including but not limited to the storage, transportation, treatment, discharge, dispersal, release, emission or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic materials, chemicals, radon, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any watercourse or body of water, or otherwise, or

          2.     any regulation, order, direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing;

      G.     based upon or directly or indirectly arising out of or resulting from any actual or alleged (1) false arrest, malicious prosecution, abuse of process, false detention or false imprisonment; (2) assault and battery; (3) libel, slander or defamation of character; (4) wrongful entry or eviction; or (5) invasion of any right of privacy;

      H.     based upon or directly or indirectly arising out of or resulting from any actual or alleged failure or omission on the part of any **INSURED** to procure or adequately maintain insurance, suretyship, or bonds;

      I.     based upon or directly or indirectly arising out of or resulting from any actual or alleged use, exposure, presence, existence, detection, removal, elimination or avoidance of asbestos, or any actual or alleged asbestos-related injury or damages;

      J.     seeking relief or redress in any form other than money damages including but not

limited to **CLAIM(S)** for injunctive relief in any form whatsoever and including disciplinary proceedings;

K.     based upon or directly or indirectly arising out of or resulting from the breach of an express warranty or guarantee;

L.     based upon or directly or indirectly arising out of or resulting from any actual or alleged infringement of copyright, title, slogan, patent, trademark, trade dress, service mark or service name;

M.     based upon or directly or indirectly arising out of or resulting from any actual or alleged unfair competition, interference with contract or violation of anti-trust laws;

N.     to the extent that there is coverage under any other existing valid policy or policies, whether such other insurance is stated to be contributory, excess, contingent or otherwise and regardless of whether or not such **LOSS** is collectible or recoverable under such other insurance; provided, however, that this exclusion shall not apply to any **LOSS** in excess of the retention and limit of liability of such other policy or policies where such **CLAIM** is otherwise covered under the terms of this Policy;

O.     based upon or directly or indirectly arising out of or resulting from any actual or alleged:

1.     **WRONGFUL ACT** or matter, fact, circumstance, situation, event or transaction that has been the subject of any claim made prior to the inception of this Policy or of any notice given during any prior policy;

2.     **WRONGFUL ACT** which, together with a **WRONGFUL ACT** that has been the subject of any claim or notice identified in O.1. above, would constitute **INTERRELATED WRONGFUL ACTS**; or

UND000067

3.      Matter, fact, circumstance, situation, event or transaction known to an **INSURED** prior to the Coverage Date set forth in Item 7 of the Declarations if such matter, fact or circumstance would cause a reasonable person to believe that a **CLAIM** for a **WRONGFUL ACT** may be made;

P.      based upon or directly or indirectly arising out of or resulting from any violation of any civil rights laws, including but not limited to discrimination by the Insured on the basis of age, color, race, creed, sex, size, national origin or marital status;

Q.      based upon or directly or indirectly arising out of or resulting from any actual or alleged assumption by the **INSURED** under any contract or agreement of the liability of others, unless such liability would have attached to the **INSURED** in the absence of such contract or agreement;

R.      based upon or directly or indirectly arising out of or resulting from any actual or alleged:

1.      electronic or software failure, or

2.      failure, breakdown or malfunction of any machine or system of machines;

S.      based upon or directly or indirectly arising out of or resulting from any actual or alleged **MONEY LAUNDERING** or any actual or alleged act which is in breach of and/or constitutes an offence under any money laundering legislation (or any provisions and/or rules or regulations made by any regulatory body or authority thereunder);

T.      based upon or directly or indirectly arising out of or resulting from any actual or alleged advertising or solicitation activities of an **INSURED**;

U.      based upon or directly or indirectly arising out of or resulting from any of the following, regardless of any other cause or event contributing concurrently or otherwise to the loss:

UND000068

1.      war, invasion, acts of foreign enemies, hostilities, or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.      any **ACT OF TERRORISM**;

This exclusion applies to all **LOSS** based upon, directly or indirectly arising out of or resulting from any action taken in controlling, preventing, suppressing or in any way relating to 1. or 2. above;

V.      brought by or on behalf of any governmental authority, quasi-governmental authority or other regulatory authority or agency, except when acting in the capacity of a customer or client of the **INSURED** or on behalf of a customer or client of the **INSURED** and when such **CLAIM** arises from Professional Services rendered or that should have been rendered to such authority or customer or client;

W.      based upon or directly or indirectly arising out of or resulting from loan servicing, including (1) collecting, receiving or recording payments on mortgage loans, (2) establishing or administering tax or insurance escrow accounts on mortgage loans, (3) managing real property owned by or under the supervision or control of an Insured, or (4) performing any other acts related to (1), (2) or (3);

X.      based upon or directly or indirectly arising out of or resulting from any actual or alleged duty to repurchase a loan;

Y.      based upon or directly or indirectly arising out of or resulting from any actual or alleged breach by an Insured of an agreement to hold harmless or indemnify an investor, purchaser or lender in connection with a loan originated, made, held or sold by an Insured as mortgage broker or mortgage banker;

UND000069

Z.      based upon, arising out of or in consequence of forming, syndicating, operating, administering, advising or rolling up a limited partnership or real estate investment trust;

AA.     based upon or directly or indirectly arising out of or resulting from the depreciation (or the failure to appreciate) in value of any investment transaction, including real property, securities, commodities, currencies, options and futures, or any actual or alleged representation, advice, guarantee or warranty provided by or behalf of an Insured with regard to the performance of any such investment;

BB.     based upon or directly or indirectly arising out of or resulting from any actual or alleged (1) non-disclosure, concealment, misrepresentation, misstatement or falsification of any terms of a loan, or of any rights or information required to be disclosed or revealed under TILA; or (2) improper, excessive, illegal, or unauthorized fees, penalties or costs, including but not limited to prepayment penalties. The term "TILA" means, for purposes of this Exclusion, the Truth-in-Lending Act of 1968, Title I of the Consumer Credit Protection Act as amended (15 USC § 1601 et seq.) or Regulation Z (12 CFR Part 226);

CC.     brought against the Parent or affiliated entities of a corporation named in Item 1 of the Declarations, or brought by or on behalf of a Parent or affiliated entities of a corporation named in Item 1 of the Declarations.  The term "Parent" means, for purposes of this Exclusion, a corporation that owns more than 50% of the voting stock of the corporation, if any, named in Item 1 of the Declarations;

DD.     based upon or directly or indirectly arising out of or resulting from any defective title or deed;

EE.     based upon or directly or indirectly arising out of or resulting from any transaction (1) involving real property in which any Insured or any affiliate of any Insured has or acquires a direct or indirect ownership or financial interest, or (2) involving a lease of property in which any Insured or any affiliate of any Insured has a direct or indirect ownership or financial

UND000070

interest;

FF.      based upon or directly or indirectly arising out of or resulting from the insolvency or bankruptcy of any Insured or of any other entity including but not limited to the failure, inability, or unwillingness to pay Claims, losses, or benefits due to the insolvency, liquidation or bankruptcy of any such individual or entity.

## V.      LIMIT OF LIABILITY AND RETENTION

### A.      LIMIT OF LIABILITY

The Limit of Liability stated in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Company for all **LOSS** under the Policy, including **DEFENSE COSTS**, regardless of the number of **CLAIMS** made against the **INSUREDS** or the time when **LOSS** payments are made by the Company.

### B.      EXHAUSTION OF LIMIT

The Company shall not be obligated to pay any **LOSS**, including **DEFENSE COSTS**, or defend any **CLAIM** after the available Limit of Liability has been exhausted by payment of money damages, settlements or **DEFENSE COSTS**.

### C.      MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS

The inclusion herein of more than one **INSURED** or the making of **CLAIM(S)** by more than one person or organization shall not operate to increase the Company's Limit of Liability. **CLAIM(S)** arising out of a single **WRONGFUL ACT**, or **INTERRELATED WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made:

1.      when the earliest **CLAIM** within such single **CLAIM** was first made, or

2.      when notice was first given under any policy of insurance of any **WRONGFUL ACT** or any matter, fact, circumstance, situation, event or transaction that underlies any **CLAIM** within such single **CLAIM**,

and all such **CLAIM(S)** shall be subject to the same Limit of Liability.

**D.      RETENTION**

Subject to the Limit of Liability, the Company shall only be liable for **LOSS** in excess of the Retention stated in Item 4 of the Declarations.  This Retention shall apply to each **CLAIM** made against the **INSUREDS**.  The Retention shall be borne by the **INSURED** as its own uninsured risk and shall be fully paid by the **INSURED** before Underwriters shall incur any liability to pay any **LOSS**.  The Retention applies to **DEFENSE COSTS**, whether or not any other **LOSS** is paid.

**VI.      NOTICE AND LOSS PROVISIONS**

A.      As a condition precedent to the availability of the rights provided under this Policy, the **INSURED** shall give written notice to the Company of any **CLAIM** made against the **INSURED** as soon as practicable, but in no event later than sixty (60) days after the date such **CLAIM** is first made.

B.      If during the **POLICY PERIOD** or the Extended Reporting Period, if applicable, the **INSURED** shall first become aware of a specific **WRONGFUL ACT**, and during such period gives written notice to the Company as soon as practicable of:

1.      the specific **WRONGFUL ACT** and the identities of the potential claimants;

UND000072

2.      the injury or damage which has or may result from such specific **WRONGFUL ACT**; and

3.      the circumstances by which the **INSURED** first became aware of the specific **WRONGFUL ACT**

then any **CLAIM** which is subsequently made against the **INSURED** arising out of such **WRONGFUL ACT** shall, for the purposes of this Policy, be deemed to have been made when such written notice was first given.

C.      The notifications provided for above shall be made to the party set forth in Item 8 of the Declarations.

## VII.   GENERAL CONDITIONS

### A.      APPLICATION

By acceptance of this Policy, all **INSUREDS** agree as follows:

1.      The particulars and statements contained in the application, a copy of which is attached hereto, and any materials submitted therewith (which are on file with the Company and are deemed attached hereto, as if physically attached hereto) are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy;

2.      the statements in the application and in any materials submitted therewith are the **INSUREDS'** representations and shall be deemed material to the acceptance of the risk or the hazard assumed by the Company under this Policy and this Policy is issued in reliance upon the truth of such representations;

UND000073

3.      in the event the application, including materials submitted therewith, contains any misrepresentation made with the actual intent to deceive or contains any misrepresentation that materially affects either the acceptance of the risk or the hazard assumed by the Company under this Policy, this Policy shall be void in its entirety and of no effect whatsoever; and

4.      this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the **INSUREDS**.

**B.      EXTENDED REPORTING PERIOD**

If the Company cancels this Policy other than for non-payment of premium or does not renew this Policy, the **INSURED** shall have the right, upon payment of an additional premium of 100% of the total policy premium hereunder to an extension of the insurance provided by this Policy with respect to any **CLAIM** made against the **INSURED** during the period of twelve (12) months after the effective date of such cancellation or non-renewal, but only with respect to any **WRONGFUL ACT** committed before the effective date of such cancellation or non-renewal and otherwise insured under this Policy.

The right to such an extension shall terminate unless written notice is received by the Company from the **INSURED** within thirty (30) days after the effective date of such cancellation or non-renewal with full payment of premium for the Extended Reporting Period, as well as payment of any premium and/or Retention amounts due to the Company. If such written notice and payment are not received by the Company as aforesaid, the **INSURED** shall not have the right to such an extension.

An increase in premium, a change in the Limits of Liability, or a change in the terms and conditions of the Policy shall not constitute a nonrenewal of this Policy. Once purchased, an Extended Reporting Period may not be cancelled by either the **INSUREDS** or the Company; however, the Extended Reporting Period shall automatically terminate if the **INSUREDS**

UND000074

purchase other insurance that provides substantially the same coverage as this Policy or would so provide except for the exhaustion of its limits of liability.  If the Extended Reporting Period is automatically terminated as set forth above, all of the premium shall be fully earned at the time of payment.

The Limit of Liability provided during the Extended Reporting Period shall be part of, and not in addition to, the Limit of Liability provided during the **POLICY PERIOD**, as stated in Item 3 of the Declarations.  All other terms and conditions of this Policy shall apply to any **CLAIM** made during the Extended Reporting Period.

### C.    CANCELLATION

This Policy may be cancelled by the **INSURED** by mailing or delivering prior written notice thereof to the Company or by surrender of this Policy to the Company at its address stated in the Declarations.  This Policy may also be cancelled by or on behalf of the Company by mailing to the **INSURED** by registered, certified, or other first class mail, at the **INSURED'S** address stated in Item 1 of the Declarations, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall be effective.  However, the Company may cancel this Policy for non-payment of premium due on ten (10) days' written notice thereof to the **INSURED**.  The mailing of such notice as aforesaid shall be sufficient proof of the giving of such notice.  The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **POLICY PERIOD**.  If this Policy shall be cancelled by the **INSURED**, the Company shall retain the customary short rate proportion of the premium hereon.  If this Policy shall be cancelled by the Company, the Company shall retain the pro rata proportion of the premium hereon.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation by the Company, but such payment shall be made as soon as practicable.

### D.    SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to all the

**INSURED'S** rights of recovery therefor against any person or organization, and the **INSURED** shall execute and deliver all instruments and papers and do whatever else is necessary to secure such rights.  Any amount recovered in excess of the Company's total payment shall be paid to the **INSURED**, less the cost of the Company of such recovery.

### E.    ASSISTANCE AND COOPERATION

The **INSURED** shall cooperate with the Company and, upon the Company's request, shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions, and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all without charge to the Company.  The **INSURED** shall further cooperate with the Company and do whatever is necessary, including authorizing claims, actions, or proceedings in the **INSURED'S** name against others, to secure and effect any rights of indemnity, contribution or apportionment which the **INSURED** may have.  The **INSURED** shall not demand or agree to arbitration of any **CLAIM** made against the **INSURED** without the prior written consent of the Company thereto, which consent shall not be unreasonably withheld.

### F.    ACTION AGAINST THE COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, the **INSURED** shall have fully complied with all the terms, conditions and provisions of the Policy, nor until the amount of the **INSURED'S** obligation to pay shall have been finally determined either by judgment against the **INSURED** after actual trial or by written agreement of the **INSURED**, the claimant, and the Company.  Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy only to the extent of the available insurance afforded by this Policy.  Nothing contained in this Policy shall give any person or organization any right to join the Company as a co-defendant in any action against the **INSURED** to determine the

**INSURED'S** liability except as provided by law.

### G.      ENTITY AUTHORIZATION CLAUSE

By acceptance of this Policy, the Entity named in Item 1 of the Declarations agrees to act on behalf of all **INSUREDS** with respect to the giving and receiving of notice of **CLAIM** or cancellation, the payment of premiums and the receiving of any return premiums that may become due under this Policy, and the **INSUREDS** agree that the Entity shall act on their behalf.

### H.      TERRITORY

This Policy only applies to **CLAIMS** made against the **INSUREDS** in the United States of America, its territories or possessions, or Canada.

### I.      ASSIGNMENT

This Policy and any and all rights hereunder are not assignable unless the written consent of the Company is endorsed hereon.

### J.      CONFORMITY TO STATUTE

Any provisions of this Policy that are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

### K.      CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person acting on behalf of the Company shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued to form part of this Policy.

UND000077

**L.      ENTIRE AGREEMENT**

The **INSUREDS** agree that this Policy, including the application and any materials submitted therewith, the Declarations and any written endorsements attached to and forming part of this Policy, constitute the entire agreement between the **INSUREDS** and the Company or any of its agents relating to this insurance.

**M.      FALSE OR FRAUDULENT CLAIM**

If an **INSURED** shall fraudulently proffer any **CLAIM** with respect to the amount thereof or otherwise, this Policy shall become void and all coverage hereunder shall be forfeited.

SUA MCPL 2008 Ver 10.30.08

## SECURITY ENDORSEMENT

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

SECURITY:

|  |  |  |
|---|---|---|
| **100.00%** | **Lloyd's of London.  Syndicate breakdown as follows:** | |
| | | |
| 82.50% | CSL 1084 | |
| 17.50% | MKL 3000 | |
| | | |
| **100.00%** | **Total** | |

The effective date of this endorsement is March 1, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Lloyd's Security 2019
WS SEC 1

A1-WS

## SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of $2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium, or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.


A2    NMA1168

## MOLD EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this policy excludes any claim and/or claims expenses directly or indirectly relating to the actual, potential, alleged or threatened presence of any mold, mildew, fungi, spores or other similar organisms.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


A6    MOLD EXCLU 1

UND000081

**SEVERAL LIABILITY NOTICE**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.


A7    LSW 1001 (Insurance)

UND000082

## CLAIM NOTIFICATION CLAUSE (U.S.A.)

### (Approved by Lloyd's Underwriters' Non-Marine Association)

The Assured upon knowledge of any occurrence likely to give rise to a claim hereunder shall give immediate advice thereof to the Underwriters through

        Mr. John K. Silk
        Karbal, Cohen, Economou, Silk & Dunne, LLC
        150 South Wacker Drive, 17th Floor
        Chicago, IL 60606
        Email:

to assess the loss on behalf of Underwriters.

14/12/44

A8    N.M.A. 358

UND000083

## YIELD SPREAD ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that

This Policy does not apply to Loss in connection with any Claim:

> based upon or directly or indirectly arising out of or resulting from any actual or alleged:

> > (1)  yield spread premium,
> > (2)  kickback,
> > (3)  improper split of charges,
> > (4)  improper payment of compensation for the referral of settlement
> >       service business

in connection with any mortgage lending transaction, including but not limited to any Claim for violation of Section 8 of the Real Estate Settlement Practices Act, any rules or regulations promulgated thereunder or pursuant thereto, or any similar provisions of federal, state, or local law, rules or regulations.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

A9    YSP 1

## APPLICABLE LAW (U.S.A.)

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.)

14/09/2005
Form approved by Lloyd's Market Association

A13    LMA5021

UND000085

### NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability), not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.      Under any Liability Coverage, to injury, sickness, disease, death or destruction:

> (a)  with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

> (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

> (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

> (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

> (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

> "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

> (a)  any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60

A14     NMA1256

UND000087

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

It is understood and agreed that the following endorsement below replaces Item 7 of the Insurance Jacket Certificate Provisions SLC-3:

## PREMIUM CANCELLATION SCHEDULE

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this Insurance is written it is agreed that in the event of cancellation thereof by the **Assured** the Earned Premium shall be computed as follows:

## SHORT RATE CANCELLATION TABLE

A.   For insurances written for one year:

| Days Insurance in Force | | Percent of One Year Premium | Days Insurance in Force | | Percent of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | ................................. | 30 | 206 - 209 | ....................................... | 66 |
| 74 - 76 | ................................. | 31 | 210 - 214 | (7 months) .................... | 67 |
| 77 - 80 | ................................. | 32 | 215 - 218 | ....................................... | 68 |
| 81 - 83 | ................................. | 33 | 219 - 223 | ....................................... | 69 |
| 84 - 87 | ................................. | 34 | 224 - 228 | ....................................... | 70 |
| 88 - 91 | (3 months) ................. | 35 | 229 - 232 | ....................................... | 71 |
| 92 - 94 | ................................. | 36 | 233 - 237 | ....................................... | 72 |
| 95 - 98 | ................................. | 37 | 238 - 241 | ....................................... | 73 |
| 99 - 102 | ................................. | 38 | 242 - 246 | (8 months) .................... | 74 |
| 103 - 105 | ................................. | 39 | 247 - 250 | ....................................... | 75 |
| 106 - 109 | ................................. | 40 | 251 - 255 | ....................................... | 76 |
| 110 - 113 | ................................. | 41 | 256 - 260 | ....................................... | 77 |
| 114 - 116 | ................................. | 42 | 261 - 264 | ....................................... | 78 |
| 117 - 120 | ................................. | 43 | 265 - 269 | ....................................... | 79 |
| 121 - 124 | (4 months) ................. | 44 | 270 - 273 | (9 months) .................... | 80 |
| 125 - 127 | ................................. | 45 | 274 - 278 | ....................................... | 81 |
| 128 - 131 | ................................. | 46 | 279 - 282 | ....................................... | 82 |
| 132 - 135 | ................................. | 47 | 283 - 287 | ....................................... | 83 |
| 136 - 138 | ................................. | 48 | 288 - 291 | ....................................... | 84 |
| 139 - 142 | ................................. | 49 | 292 - 296 | ....................................... | 85 |
| 143 - 146 | ................................. | 50 | 297 - 301 | ....................................... | 86 |
| 147 - 149 | ................................. | 51 | 302 - 305 | (10 months).................... | 87 |
| 150 - 153 | (5 months) ................. | 52 | 306 - 310 | ....................................... | 88 |
| 154 - 156 | ................................. | 53 | 311 - 314 | ....................................... | 89 |
| 157 - 160 | ................................. | 54 | 315 - 319 | ....................................... | 90 |
| 161 - 164 | ................................. | 55 | 320 - 323 | ....................................... | 91 |
| 165 - 167 | ................................. | 56 | 324 - 328 | ....................................... | 92 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 168 - 171 | ..................................... | 57 | 329 - 332 | ..................................... | 93 |
| 172 - 175 | ..................................... | 58 | 333 - 337 | (11 months)................... | 94 |
| 176 - 178 | ..................................... | 59 | 338 - 342 | ..................................... | 95 |
| 179 - 182 | (6 months) ................. | 60 | 343 - 346 | ..................................... | 96 |
| 183 - 187 | ..................................... | 61 | 347 - 351 | ..................................... | 97 |
| 188 - 191 | ..................................... | 62 | 352 - 355 | ..................................... | 98 |
| 192 - 196 | ..................................... | 63 | 356 - 360 | ..................................... | 99 |
| 197 - 200 | ..................................... | 64 | 361 - 365 | (12 months)................... | 100 |
| 201 - 205 | ..................................... | 65 | | | |

B.    For Insurances written for more or less than one year:

    1.  If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

    2.  If insurance has been in force for more than 12 months:

        (a)  Determine full annual premium as for an insurance written for a term of one year.

        (b)  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

        (c)  Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

Furthermore and notwithstanding the foregoing, Underwriters shall retain the total premium for this Certificate, such total premium to be deemed earned upon inception of the Certificate if any **Claim** or **Circumstance** is reported to Underwriters under this Certificate on or before such date of cancellation.

The effective Date of this endorsement is:  March 1, 2020.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

A15     PCS 1

UND000089

**DELETE EXCLUSION W**
**ENDORSEMENT**

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

In consideration of the premium charged, it is understood and agreed that Exclusion W. of the "Professional Services Liability Policy" is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

The effective date of this endorsement is March 1, 2020.


A17    DEL W

**EXCLUDE SERVICES ENDORSEMENT**

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

In consideration of the premium charged, it is understood and agreed that the Policy does not apply to LOSS in connection with any CLAIM directly or indirectly based upon or arising out of or resulting from the providing of or failing to provide the professional services described below:

AUTOMOBILE SALES

REPOSSESSION SERVICES

The effective date of this endorsement is March 1, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

A37     1125644.1

**UND000091**

## SPECIFIC ENTITY EXCLUSION

To be attached to and form part of Bond Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

In consideration for the premium paid, it is hereby understood and agreed that this bond shall not provide any coverage for <u>(see list of entities below)</u> or for any claim brought by and/or on behalf of <u>(see list of entities below)</u> regardless if the claim is actual or alleged.

**CREDIT MOTORS, INC.**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Effective date of this endorsement is March 1, 2020.

A51    SEE 1

**UND000092**

## CONFORMITY CLAUSE

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**


It is understood that wherever the term "Assured" is used in this policy or policy jacket, it shall be deemed to have the same meaning as "Insured".

This endorsement is effective as of: March 1, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


A87

**CHANGE LOAN TYPE ENDORSEMENT**

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

It is hereby understood and agreed that Section IV. EXCLUSIONS is amended by deleting Paragraph Y. and adding the following:

      Y.     based upon or directly or indirectly arising out of or resulting from any actual or alleged breach by an Insured of an agreement to hold harmless or indemnify an investor, purchaser or lender in connection with a loan originated, made, held or sold by an Insured;

Effective date of this endorsement is March 1, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

A88(A)

UND000094

## LEHMAN BROTHERS EXCLUSION

To be attached to and form part of Policy Number:  **SUAWS20318-2002**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

In consideration of the premium charged, it is understood and agreed that

This Policy does not apply to Loss in connection with any Claim brought by or on behalf of Lehman Brothers Holdings Inc. or any of its subsidiaries or affiliates (collectively, "Lehman Brothers"), or any bankruptcy trustee for Lehman Brothers or any party that acquired Lehman Brothers' rights, assets or liabilities.


This endorsement is effective as of March 1, 2020.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.


A110 (07-13)



# Stateside
## Underwriting Agency
A Division of Johnson . Johnson

*335 Commerce Dr., Crystal Lake, IL 60014*

**SUA Financial Lending Application for Professional Liability and Bond**

*Instructions for Applicant Organization: Please type or print in ink. Answer all questions. If a question is not applicable, please provide an explanation and state NOT APPLICABLE. If the answer to any question is none, state NONE. If space is insufficient to answer any question fully, attach separate sheet(s).*

**Contact Information**

*Name of Applicant:* Automobile Acceptance Corp Inc Credit Motors

*List any subsidiaries for which coverage is desired:* _____

| | | | |
|---|---|---|---|
| *Street Address:* 1400 State Ave | | | |
| *City:* Kansas City | *State:* KS | *Zip Code:* 66102 | |
| *Website:* | | | |
| *Contact Person:* Tom Wood | *Phone:* 913-621-1206 | *E-mail:* ahaning@creditmotors.com | |

**Coverage Request (Check box if coverage is desired)**

| | | | |
|---|---|---|---|
| *Professional Liability:* | ☑ | *Limit Request:* | 1,000,000/2,000,000 |
| *Fidelity Bond:* | ☐ | *Limit Request:* | |
| *Cyber Liability*:* | ☑ | *Limit Request:* | 1,000,000 |
| *Directors & Officers Liability*:* | ☐ | *Limit Request:* | |
| *Employment Practices Liability*:* | ☐ | *Limit Request:* | |
| *Separate application required | | | |

**Current Coverage**

| | Policy Period | Carrier | Limit | Deductible | Premium | Retro Date |
|---|---|---|---|---|---|---|
| *Fidelity Bond* | | | | | | |
| *Professional Liability* | 3-1-19 to 3-1-2 | Lloyds | $1/$2 million | 10,000 | | 3-1-19 |
| *Cyber Liability* | 3-1-19 to 3-1-2 | Lloyds | $1 million | 5,000 | | 3-1-19 |
| *Directors & Officers Liability* | | | | | | |
| *Employment Practices Liability* | | | | | | |

**General Questions**

1. *Year Established:* 1988

2. *Number of Locations with Underwriting Authority:* 1

3. *List the States of All Locations:* Kansas

4. *Organization type:* ☑ Corporation ☐ Partnership ☐ Sole Proprietor ☐ LLC ☐ Individual Loan Originator

5. *Has there been any change in ownership or senior management in the past three years?* ☐ Yes ☑ No

6. *Identify all principals, persons, or entities owning 10% or more of the Applicant Company(ies), Parent Company (if any, please identify such as the parent), and indicate the percentage of ownership for each.*

Tom Wood 100%

7. *Describe the Applicant's nature of business:* Auto Loans from Credit Motors, Inc

8. *Please list all Professional Associations that the applicant is a member of:* NFIB, NIADA, KADA, BBB

UND000096

Stateside
Underwriting Agency

**Financial Information**

9. Are the Applicant's financial statements prepared or audited by a CPA? ☑Yes ☐No
10. Does the Applicant have sufficient working capital for the next 12 months of operations? ☑Yes ☐No

| | Last Fiscal Year (20__ to 20__) | Current Year (20__ to 20__) |
|---|---|---|
| 11. Assets | | |
| 12. Liabilities | | |
| 13. Revenues | | |
| 14. Net Income | | |

**Employee Count** (List the current number of employees by the following activities)

15. Board of Directors/Corporate Officers — 1
16. Full Time Employees — 6
17. Part Time Employees — 1
18. Independent Contractors (Including 1099) (Check if coverage is desired) ☐ — 0
19. Total Employees (Combine Sections a, b, c and d if coverage for ICs is desired) — 7

**Lending Activities for the twelve (12) months ending:** 12/2019

(If the company has not yet originated or brokered any loans, advances, or financing agreements, please provide future estimates):

| Loan Volume | Number of Loans | Dollar Volume |
|---|---|---|
| 20. Loan/Finance Agreement Origination Volume which the applicant originates themselves | 952 | 6,208,000 |
| 21. Loan/Finance Agreement Servicing Volume which the applicant services themselves | 952 | 6,208,000 |
| 22. Loans/Finance Agreements purchased/acquired | 0 | |
| 23. Loans/Finance Agreements brokered | 0 | |
| 24. What percentage of the Loan Servicing Volume is 90 days past due? | 1390 | |
| 25. Please describe the type of Loans/Finance Agreements: | Auto Loans | |

**Types of Investors** (Please provide the percentage of the total loan portfolio that is sold to the following entities (Totaling 100%))

26. Sold to Fannie Mae/Freddie Mac — 0
27. Sold to Other Institutional Investors (Please describe) — 0
28. Sold to Individual Investors — 0
29. Held in Applicant's Portfolio — 0
30. Other (Please describe) — 100   No Investors
31. What percentage of the applicant's loan portfolio is securitized by the Applicant? — 0%
32. Have you introduced any new Loan Products in the past 12 months? ☐Yes ☑No
33. What is the average FICO score (if applicable)? N/A
34. Please describe the source of funds for the loans/finance agreements: WE FINANCE ALL LOANS

**Professional Liability Questions**

35. Does the Applicant have formal written quality control procedures in place? ☐Yes ☑No
36. What percentage of loans/finance agreements are subject to Quality Control review?
37. Please confirm if the TILA-RESPA Integrated Mortgage Disclosure Rule (TRID) is applicable to your company? If "No", Please explain. ☐Yes ☑No
   DON'T HAVE MORTGAGES
38. If "Yes", please confirm that the Applicant is TRID compliant. ☐Yes ☐No
39. Does the Applicant know of any or have any reported violations of laws in any of the following (FDCPA, FCRA, TCPA, TILA, RESPA, ECOA, Dodd Frank, TRID, or other consumer related lending or servicing laws) if "Yes", please provide a detailed description of their findings, fines, and what measures have been taken to correct errors. ☐Yes ☑No

UND000097

**Stateside**
Underwriting Agency
A Division of Johnston, Johnston

40. In the past, has the Applicant utilized any outside legal services or consultants to implement new regulatory compliance of Dodd Frank, TRID, or other similar national and local legislations. ☑Yes ☐No

41. Has the applicant been investigated, audited, or fined by any national or local regulatory agency? If Yes, please describe which agency, the results of the investigation, and any corrective actions taken. ☐Yes ☑No

---

42. Does the Applicant have a compliance officer or similar position to confirm compliance with federal state and local laws? ☑Yes ☐No

43. Does the Applicant use regulatory compliance software? ☐Yes ☑No

44. Has the Applicant ever been required to repurchase or indemnify any loan(s)? (If "Yes", please provide the number of loans, the dollar volume, details of the repurchase, and any corrective actions taken.) ☐Yes ☑No

---

45. Please confirm all required licenses are in force. ☑Yes ☐No

46. Has the Applicant had any investigation into licensing or are there any ongoing license investigations from any state agency or other authority? If "Yes", please provide full details of investigation including the outcome and/or status. ☐Yes ☑No

---

47. Does the Applicant utilize a fraud detection service? If "Yes", what software or company do you use? (If applicable) ☐Yes ☑No

---

48. Does the Applicant have a fraud guard protection system or similar procedure to verify legitimacy of borrowers by checking social security numbers or another method to determine borrower identity? (If applicable) ☑Yes ☐No

49. Please confirm that the Applicant has dual controls in place so that no single person can control the entire origination or underwriting process? ☑Yes ☐No

50. Does the Applicant commingle Investor funds, or any other funds, required to be segregated by law or a third party? ☐Yes ☑No

---

**Fidelity Bond Supplemental Information**
If the Applicant is not requesting Bond coverage, check here ☑ and proceed to next section.

51. List Loss Payee Requirements for Investors/Warehouse Lenders

---

52. Are bank accounts reconciled by someone not authorized to deposit or withdraw? If "No", please describe what controls are in place. ☐Yes ☐No

---

53. Is countersignature of checks (including escrow accounts) required? If "No", please describe what controls are in place to prevent check writing fraud. ☐Yes ☐No

---

54. Are all cash balances, bank balances, or similar balances reconciled on a monthly basis? If "No", please describe what controls are in place. ☐Yes ☐No

---

55. Are reconciliations prepared and supervised by an individual with no responsibility for cash receipts or disbursements by means of checks or wire transfer? If "No", please describe what controls are in place. ☐Yes ☐No

---

56. Please estimate the annual number of outgoing wire transfer transactions above $5,000

57. Does an officer, who is not responsible for the receipt or disbursement of cash, review all reconciliations and question unusual unreconciled items? If "No", please describe what controls are in place. ☐Yes ☐No

---

58. Does the Applicant verify the validity of funds transfer or payment requests with out-of-band authentication procedures? (Out-of-band means using a different means of communication from the funds transfer or payment request. For example, if the request comes in via email, the applicant will verify the validity of the request by calling the requesting party back at a pre-approved phone number.) If "No", how does the applicant protect itself from fraudulent fund requests. ☐Yes ☐No

---

UND000098



*Construction Lending Supplemental Information*
*If No Construction Lending, check here* ☑ *and proceed to next section.*
*Breakdown of construction loan activity this past year:*

| | Number of Loans | Dollar Volume |
|---|---|---|
| 59.  1-4 Family | | |
| 60.  Multi-Family | | |
| 61.  Commercial Property | | |
| 62.  Total (Add a through c) | | |

63.  Does the company require Builder's Risk Insurance to be written on "all risk" basis?                          ☐Yes ☐No
64.  Does the company verify Builder's Risk coverage by receiving the original policy prior to the inception of construction activities?                     ☐Yes ☐No

65.  If either answer to Question 63 or 64 is "No", please explain.

66.  When construction is completed, or occupied, Builder's Risk Insurance can terminate automatically.  Please describe the procedures in place to convert Builder's Risk Insurance to a Property Insurance Policy when construction is complete or occupied.

67.  Does the Company always obtain a take-out commitment from an institutional lender prior to issuing a commitment to fund construction loans? If "No", how is the company protected against the financial failure of a construction project? ☐Yes ☐No

68.  Where does the Company obtain funds from which to make construction loans?
   a.  Company Funds                                                                           ☐Yes ☐No
   b.  Permanent Investors' Funds                                                             ☐Yes ☐No
   c.  Warehouse Line of Credit                                                               ☐Yes ☐No
   d.  Other (specify)
69.  What type of guarantees are required on a construction loan?
   a.  Full personal guarantee of developer                                                    ☐Yes ☐No
   b.  Guarantee of developer and spouse                                                      ☐Yes ☐No
   c.  Guarantee of completion bond                                                           ☐Yes ☐No
   d.  Performance bond                                                                         ☐Yes ☐No
   e.  Other (specify)
70.  Does the Company authorize and pay out land costs and/or fees to the developer for its outside services prior to commencing disbursement of actual physical progress payments?                                                         ☐Yes ☐No
71.  What percentage of the construction loan funds and reserves for taxes, insurance and subcontractors' retainage are withheld until final completion?
72.  Are progress payments authorized only after physical inspection?                            ☐Yes ☐No
73.  Describe the extent of physical inspection. How Often? At what stages of construction? By who (position)? Is this person the same as the officer or employee who served in soliciting or approving the loans?

74.  Does the company use "in-house" (or outside) appraisers to review construction plans and/or make appraisals? ☐Yes ☐No
**Claims Related Questions**
75.  Has any insurance been declined or canceled during the past five years? (Not applicable in the state of Missouri)? If "Yes", please explain.                                                                                        ☐Yes ☑No

76.  During the past five years, has the Applicant or any predecessor in business or any of the past or present partners, Officers, Directors, or employees been the subject of an investigation, reprimand, disciplinary action, criticism, or filed complaint by the FHA, VA, PMI carrier, any investor, authority, or governmental agency? If "Yes", please explain.            ☐Yes ☑No

UND000099

**Stateside**
Underwriting Agency

77. Does the applicant, or any predecessor in business or any of the past or present partners, Officers, Directors, or employees have any reasonable basis to believe that the applicant or any predecessor in business or any of the past or present partners, Officers, Directors or employees are aware of any circumstances, incidents, or situations during the past five years which have resulted or which may result in claims being made against the applicant, any of the past or present partners, Officers, Directors or employees or former employees of the applicant? If "Yes", please explain.      ☐ Yes ☑ No

78. List all losses sustained during the past five years, whether reimbursed or not, from  3-1-19  to  3-1-20
    Check if none ☑

| Date of Loss | Type of Loss | Amount of Loss | Amount Recovered from Insurance | Amount Recovered from other than Insurance | Amount of Loss Pending | If loss occurred at other than Main Office, state location |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*If there is knowledge of any such fact, circumstance, or situation, any claim or action subsequently emanating therefrom shall be excluded from coverage under the proposed insurance.*

*The undersigned authorized person, on behalf of the Applicant, attest that all claims have been reported if the Applicant is aware of them. The Applicant further understands that any claim submitted after the completion of this application shall render any terms provided void and Underwriters shall have the right to re-underwrite the Applicant. In addition, no information provided by this application or along with this application shall be deemed to report a claim. Such notice should be made as instructed by the policy.*

*The undersigned authorized person, on behalf of the applicant, attests that to the best of his/her knowledge and belief the statements set forth herein are true. Although the signing of this Application Form does not bind the undersigned to effect insurance, the undersigned agrees that this application and the said statements shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy.*

*The undersigned authorized person on behalf of the applicant declares that the above statements are true, that neither the undersigned person nor the applicant has suppressed or misstated facts and that at the present time the applicant has no reason to anticipate any claims being brought against the applicant or any representative of the applicant or knowledge of any negligent act, error, omission or offense on the applicant's part or any representative of the applicant except as stated herein, and agrees that this Application Form shall be the basis of the contract between the applicant and the Company and shall be deemed a part hereof.*

*NEW YORK—WARNING: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.*

*FRAUD WARNING: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.*

*Signing this form does not bind you to complete the insurance. Coverage will become effective upon approval of the application and issuance of the policy. It is agreed that this form will be the basis of the contract. Should a policy be issued, this form will be attached to and become a part of the policy.*

Signature: _____     Date: 12/18/19

Title: OWNER

SUA 12-18    X _____      2/21/20
             Tom Wood                        Date

Page 5 of 5

UND000100



# Stateside
### Underwriting Agency
*A Division of Johnson · Johnson*

**AUTO FINANCE SUPPLEMENT**
**BOND & PROFESSIONAL LIABILITY**
**THIS APPLICATION IS FOR A CLAIMS MADE INSURANCE POLICY**

1.  Name of Applicant:

    Automobile Acceptance Corp, Inc Credit Motors

2.  Type of firm applying for Insurance:

    **Auto Sales:**
    Auto Dealership                   0
    Used Auto Sales                   0
    Other Auto Sales (describe) 0
    **Lenders:**
    Finance Company                   Y
    Bank                              N
    Credit Union                      N
    Online Lender                     N
    Other (describe)

3.  Number of locations        1

4.  Please describe in detail the auto finance process for the applicant apply for an auto loan:

    Fill out application, credit bureau check, verification on job info, then five references

5.  Auto Finance Activities for the twelve (12) months ending 20 19

    | | Dollar Volume | Number of Loans |
    |---|---|---|
    | a. Servicing: | 6,208,000 | 952 |
    | b. Loan Origination: | 6,208,000 | 952 |

6.  Does the applicant make any:
    a. Simple Loans           X    Y _____N
    b. Front Loaded Loans     _____Y X    N
    c. Pre-computed Loans     _____Y X    N
    d. Pre-payment fee Loans  _____Y X    N

7.  What percentage of auto loans is non-prime? 100 %

8.  If servicing auto loans, does your firm repossess in the event of default? X    Y _____N

9.  If yes above, how does your firm verify that the repossession process is being performed properly?

    We do this ourselves (mainly all voluntary) or we use a licensed & bonded repo company

10. How does the applicant assure a vehicle is not wrongfully repossessed?

    Paperwork verifying car VIN number and all legal paperwork is mailed certified

11. Does the applicant confirm, when carrying out repossession, that they verify VIN, license plate and car make prior to

    repossession? (If repossession service is performed by an outside vendor, please confirm this question for the outside vendor)

    YES Y _____N

UND000101

12. If not, please describe what precautions are taken to repossess the correct vehicle.

NA

13. Does the Applicant operate in states which require an auto lender to be licensed? X___ Y ____ N

a. If "Yes," please confirm all licenses are in force. X___ Y ____ N

14. Has the Applicant had any investigations into licensing or are there any ongoing license investigations from any state agency or other authority? _____ Y X___ N

a. If "Yes," please provide full details of investigation including the outcome and/or status:

NA

**FOR AUTO DEALERS, COMPLETE THE FOLLOWING QUESTIONS 14 THROUGH 23**

15. Do you fund your own loans? X___ Y ____ N

16. Do you have Floor Plan Financing? _____ Y X___ N

17. Do you offer more than one option for lending? ____ Y X___ N

a. If "Yes," how do you determine which financing package to offer to the customer?

NA

18. Are loan requirements and mark-ups of interest rates applied consistently with no discriminatory practices? X___ Y ____ N

19. How does the applicant confirm compliance with Truth In Lending or similar state or local laws?

We keep ourselves up to date on the laws

20. Is applicant taking appropriate means to comply with CFPB (Consumer Federal Protection Bureau), ECOA (Equal Credit Opportunity Act), Regulation B, etc.? Y___ Y ____ N

21. Explain the financial disclosure process when selling extended warranties, product improvements (such as rust proofing), maintenance plans, etc. NA

22. Also, is it clearly disclosed to the borrowers and borrowing applicants that the optional items in number 21. above are optional? _____ Y ____ N

23. Do you offer GAP insurance? _____ Y X___ N

24. When performing the loan application process, how is ID theft avoided, do you require picture ID?

Photo ID required

**FOR LENDERS OTHER THAN AUTO DEALERS, COMPLETE THE FOLLOWING QUESTIONS 25 THROUGH 29**

25. What is the average FICO score? _____

26. Are loan requirements and mark-ups of interest rates applied consistently with no discriminatory practices? _____ Y ____ N

27. How does the applicant confirm compliance with Truth In Lending or similar state or local laws?


28. Is applicant taking appropriate means to comply with CFPB (Consumer Federal Protection Bureau), ECOA (Equal Credit Opportunity Act), Regulation B, etc.? _____ Y ____ N

UND000102

29.     Does the applicant have any type of fraud monitoring or prevention system in place? _____Y _____N

The undersigned authorized person, on behalf of the Applicant, attest that all Professional Liability claims have been reported if the Applicant is aware of them. The Applicant further understands that any claim submitted after the completion of this application shall render any terms provided void and Underwriters shall have the right to re-underwrite the Applicant. In addition, no information provided by this application or along with this application shall be deemed to report a claim. Such notice should be made as instructed by the policy.

The undersigned authorized person, on behalf of the Applicant, attests that, to the best of his /her knowledge and belief, the statements set forth herein are true. Although the signing of this Application Form does not bind the undersigned to effect insurance, the undersigned agrees that this application and the said statements shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy.

The undersigned authorized person on behalf of the Applicant declares that the above statements are true, that neither the undersigned person nor the applicant has suppressed or misstated facts and that at the present time the applicant has no reason to anticipate any claims being brought against the applicant or any representative of the applicant or knowledge of any Professional Liability incident or claim, except as stated below, and agrees that this Application Form shall be the basis of the contract between the applicant and the Insurer and shall be deemed a part hereof.

**The Applicant confirms by signing this application that the Applicant is not aware of any known or actual Professional Liability Losses. If such loss(es) exist, please provide details here:**

_____

_____

_____

_____

_____

The Applicant understands that this supplemental application is for Professional Liability Coverage. If other Professional Liability Coverage is in place, this policy, if issued, will be excess of any other valid professional liability insurance or indemnification.

DATE:   2-21-20

APPLICANT COMPANY NAME:
Automobile Acceptance Corporation Inc Credit Motors

NAME: _____          TITLE:
            Signature                                    President

                                                              Principle or Owner Only

Tom Wood
_____
        Print Name

UND000103