IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, subscribing to Policy Nos. SUA WS20318-2103, SUA WS20318-2002, and SUA WS20318-1901, AND MARKEL INTERNATIONAL INSURANCE COMPANY LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>AUTOMOBILE ACCEPTANCE CORPORATION INC AND EUGENE JEROME NICHOLS, individually and as class representative,<br><br>Defendants. | Case No. 2:23-CV-02030-DDC-ADM |

**AUTOMOBILE ACCEPANCE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SET ASIDE ENTRY OF DEFAULT AND FILE A RESPONSIVE PLEADING OUT OF TIME**

COMES NOW Defendant Automobile Acceptance Corporation, Inc. ("AAC"), by and through the undersigned counsel, and for its Memorandum in Support of its Motion to Set Aside Entry of Default and File a Responsive Pleading Out of Time, hereby states:

**INTRODUCTION**

This declaratory judgment action arises out of a coverage dispute between Plaintiffs and its insured, Defendant AAC, for claims made against AAC in a parallel and ongoing class action lawsuit filed in the Circuit Court of Clay County, Missouri. On March 22, 2023, this Court entered a Clerk's Entry of Default against AAC after it failed to timely file a responsive pleading to Plaintiffs' Complaint. As outlined in more detail below, AAC was served with a summons in this matter via Federal Express at its former place of business. However, because AAC is no longer in

#30340410 v1

operation, it was unaware service had ever been made until after Plaintiffs moved for an entry of default. AAC's failure to file a responsive pleading and enter default was neither willful in nature nor the result of its own culpability. Plaintiffs will not be prejudiced should the entry of default against AAC be set aside. Further, setting aside the default will allow the Court to resolve the parties' claims on their merits, which is the preferred method of resolving disputes in this Court.

The Federal Rules of Civil Procedure and prior rulings by this Court make clear that AAC has good cause to have the entry of default set aside. Thus, the entry of default should be set aside and an Order should issued permitting AAC leave to file a responsive pleading out of time.

## **FACTUAL BACKGROUND**

This declaratory judgment action arises out of a coverage dispute between Plaintiffs and their insured, AAC, relating to an underlying class action lawsuit. More specifically, Eugene Nichols—who has been named as a defendant in this declaratory action—filed class action counterclaims under the Uniform Commercial Code against AAC in the Circuit Court of Clay County, Missouri, Case No. 15CY-CV07631-01. Those class claims arise out of the financing of motor vehicle sales by AAC between August 8, 2010 and the present. On September 30, 2022, the Circuit Court of Clay County entered its Order for Class Certification in which a class of consumers was certified with Nichols as its sole representative. AAC subsequently directed the class certification order to Plaintiffs for purposes of obtaining liability coverage under its applicable policies of insurance.

On December 23, 2022, Plaintiffs directed a coverage position letter to Amy Haning, a representative of AAC, in which it indicated coverage may not be available for the underlying class action lawsuit. (*See* Lloyd's Coverage Position Letter, attached hereto as Exhibit A). On December 30, 2022, the undersigned directed correspondence to AAC's coverage counsel

informing it that he had been retained as counsel by AAC for purposes of the coverage dispute. (*See* AAC's Response Letter, attached hereto as Exhibit B). This letter not only disputed Plaintiffs' coverage position but it also placed Plaintiffs on notice that the underlying class action suit was set for mediation on February 23, 2023, wherein it was expected Plaintiffs would appear. On February 9, 2023, AAC's class action defense counsel directed a second letter to Plaintiffs, including its counsel of record in this action, reiterating the upcoming mediation and AAC's request that a representative of Plaintiffs with settlement authority attend. (*See* AAC's Follow-Up Letter, attached hereto as Exhibit C). Jean-Paul Assouad, Plaintiffs' counsel of record in this action, ultimately attended the mediation as requested by AAC on February 23, 2023. (*See* Mediation Confirmation Email, attached hereto as Exhibit D).

Plaintiffs filed this declaratory action on January 24, 2023, several weeks after being placed on notice of the underlying mediation by the undersigned counsel. On February 7, 2023, an Alias Summons was issued to AAC in care of Richard M. Erickson, who was AAC's registered agent on file with the Kansas Secretary of State's Office at that time. This initial summons was returned as unexecuted on February 28, 2023 due to the fact that Mr. Erickson is deceased. (Doc. 6). On February 8, 2023, a second Alias Summons was issued to AAC in care of the Kansas Secretary of State. Service was made on the Secretary of State's Office on that same date. On February 16, 2023, the Secretary of State's Office directed the summons and a copy of the complaint via Federal Express to AAC's address as listed in its records: 1400 State Ave., Kansas City, KS 66102. The mailing was signed for and accepted by an unknown individual on February 17, 2023. (Doc. 7). As further explained below, AAC was unaware a summons was ever mailed to the State Avenue address.

On March 21, 2023, Plaintiffs filed their Application for Entry of Default Against Defendant Automobile Acceptance Corporation, Inc. (Doc. 11). This Application was granted and a Clerk's Entry of Default Against Defendant Automobile Acceptance Corporation, Inc., was filed with the Court on March 22, 2023. (Doc. 13). AAC now respectfully requests this entry of default be set aside pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.

## **LEGAL STANDARD**

Rule 55(c) dictates that trial courts may set aside an entry of default when good cause is shown. Fed. R. Civ. P. 55(c). Importantly, Rule 55(c)'s good cause standard is "a lesser standard for the defaulting party than the excusable neglect which a party must show for relief from judgment under Rule 60(b). *Crutcher v. Coleman*, 205 F.R.D. 581, 583 (D. Kan. 2001) (citing *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997)). This position is bolstered by general court policy that "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 40 F.2d 1364, 1366 (10th Cir. 1970). Thus, "[t]he standard for setting aside an entry of default under Rule 55(c) is fairly liberal…." *Coleman*, 205 F.R.D. at 583.

Kansas District Courts generally consider three factors when determining whether good cause has been shown under Rule 55(c): (1) whether the default resulted from culpable conduct by the defendant; (2) whether the plaintiff would be prejudiced if the Court set aside the default; and (3) whether the defendant has presented a meritorious defense. *Id.* (internal citations omitted). For the reasons outlined in detail below, each of these factors weigh in favor setting aside the entry of default against AAC.

# ARGUMENT

**I.      Entry of default did not result from the culpable conduct of AAC.**

The clerk's entry of default against AAC should be set aside because it was not due to the culpable conduct of AAC. "Generally, a defendant's conduct is considered culpable if [it] has defaulted willfully or has no excuse for the default." *Id.* (citing *U.S. v. Timbers Preserve, Routt Cty, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993)). Here, AAC neither defaulted willfully nor without excuse.

AAC has been vigorously defending an underlying class action lawsuit since 2015 which was brought by Eugene Nichols in the Circuit Court of Clay County, Missouri, Case No. 15CY-CV07631-01. That suit remains ongoing and forms the very basis for Plaintiffs' present declaratory judgment action which was filed only after AAC placed Plaintiffs on notice that it would be seeking coverage for any damages arising therefrom.

By way of background, the underlying class action lawsuit arose out of transactions entered into between non-party entity Credit Motors, Inc. and buyers for the purchase of motor vehicles. (Affidavit of Amy Haning, ¶ 5). Credit Motors contemporaneously assigned its interest in each of these transactions to AAC wherefrom AAC provided financing to each buyer for the sale. (*Id.*). Credit Motors and AAC operated out of the same car lot located at 1400 State Ave., Kansas City, KS 66102. (*Id.* ¶ 6). Thus, this address was listed as AAC's principal place of business with the Kansas Secretary of State's Office. That being said, both Credit Motors and AAC wound up their businesses and shut down their physical operations effective December 31, 2022. (*Id.* ¶ 7). As such, AAC presently only employees two individuals for purposes of collecting on its remaining open accounts and administrating its final phases of business. (*Id.* ¶ 8). On January 1, 2023, non-party entity Complete Auto Sales began operating out of AAC's former place of business at 1400

State Ave., Kansas City, KS 66102. (*Id.* ¶ 9). AAC has not operated out of that location since December 31, 2022, and maintains no employees at that location. (*Id.* ¶ 7). Complete Auto Sales bears no relationship with AAC. (*Id.* ¶ 9).

To this end, AAC and its remaining employees were unaware a summons was mailed to its former place of business in this matter. (*Id.* ¶ 10). With this, AAC has no knowledge of the identity of the unknown individual who signed and accepted the mailing containing the summons on February 17, 2023, other than that the individual who signed for the mailing was not an employee of AAC. (*Id.* ¶ 11). As such, AAC was unaware service had been made until it was informed of Plaintiffs' Application for Entry of Default by counsel for Defendant Nichols. (*Id.* ¶ 12). AAC's failure to timely file a responsive pleading was not the result out of willful disregard or other culpable conduct. Rather, it arose out of a complete lack of knowledge that service had ever been made to begin with. AAC's continued defense in the underlying class action lawsuit as well as its filing of the present Motion to Set Aside show it is prepared to defend its interests in this declaratory matter.

In this same vein, Plaintiffs' counsel made no efforts to contact AAC's retained counsel prior to seeking service in this matter or moving for an entry of default. As detailed above, Plaintiffs were placed on notice on December 30, 2022, that AAC had retained the undersigned counsel for purposes of this coverage dispute. (*See* Exhibit B). Plaintiffs' counsel also corresponded with AAC's defense counsel in the parallel class action matter both before and during the underlying mediation. (*See* Exhibits C and D). However, Plaintiffs made no attempts to communicate with the undersigned or AAC's class action counsel to discuss either service or the entry of default in this matter.

#30340410 v1

In sum, AAC's failure to timely file a responsive pleading and enter default was not the result of its own culpability. Rather, circumstances surrounding the nature of service and the shutdown of AAC's physical operations several months prior created a situation in which it was wholly unaware service was ever made at all. This declaratory action arises out of AAC's claim for coverage in an underlying class action. AAC's request for coverage in this regard and ongoing vigorous defense in that parallel action over the last eight years shows that its failure to timely respond was neither willful nor intentional. Thus, this factor weighs in favor of setting aside the entry of default.

## II.     Plaintiffs will not be prejudiced if the Court sets aside the entry of default against AAC.

When determining whether a plaintiff will be prejudiced by setting aside an entry of default, courts investigate the "acts done by the moving party or events that have occurred which have in some way impaired or thwarted the non-moving party's ability to litigate or defend the case." *Super Film of America, Inc. v. UCB Films, Inc.*, No. 02-4146-SAC, 2004 WL 2413497, *2 (D. Kan. Sept. 23, 2004) (internal citation omitted). In order to prove the existence of prejudice, "[t]he non-moving party must show that any delay has actually hindered its ability to litigate the case." *Perez v. Dhanani*, No. 13-1020-RDR, 2015 WL 437769, *4 (D. Kan. Feb. 3, 2015) (citing *Kiewel v. Balbanov*, No. 10-2113-JTM, 2011 WL 1770084, *4 (D. Kan. May 9, 2011)). A slight delay in the progress of litigation is not considered too burdensome under this standard. *Id.* (internal citations omitted).

Here, only a few weeks passed between AAC's original responsive pleading deadline and Plaintiffs' Application for Entry of Default. Thus, this matter remains in its early procedural stages. In this same vein, AAC has now filed its Motion to Set Aside only 7 days after the Clerk's Entry of Default was filed. To this end, counsel for Defendant Nichols has only recently entered its own

#30340410 v1

appearance. Defendant Nichols has also not yet filed his responsive pleading. Even further, the underlying class action lawsuit from which this declaratory action arises remains ongoing in the Circuit Court of Clay County, Missouri. In all, it is clear that Plaintiffs' ability to litigate this dispute has not been actually hindered nor is there is potential for prejudice to Plaintiffs should the default be set aside. This matter remains in only its infancy stages and ample opportunity exists for the disputed claims to be resolved on their merits.

For these reasons the second factor weighs in favor of AAC and the entry of default should be set aside.

### III.     AAC has presented a meritorious defense to Plaintiffs' claims.

The final factor considered by courts when determining whether to set aside an entry of default is whether the defendant has presented a meritorious defense. "The burden to show a meritorious defense is light." *James v. XPO Logistics Freight, Inc.*, No. 19-2390-HLT-ADM, 2020 WL 4569154, *4 (D. Kan. Aug. 7, 2020) (quoting *UCB Films*, 2004 WL 2413497, *2). Importantly, it is not necessary that AAC demonstrate a likelihood of success on the merits for purposes of this motion. *Coleman*, 205 F.R.D. at 585. "Rather, [AAC's] averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense. *Id.* (citing *Jetcraft Corp. v. Banpais, S.A. De C.V.*, 166 F.R.D. 482, 486 (D. Kan. 1996)). For purposes of analyzing this fact, "the movant's version of the facts and circumstances supporting his defense [are] deemed to be true." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978) (internal citations omitted).

Here, Plaintiffs are seeking a declaration that insurance coverage is not owed to AAC under certain insurance policies for any potential damages sustained in the underlying class action lawsuit. (Doc. 1). Plaintiffs have alleged six legal bases for their position: (1) a "claim" was not

made during the "Policy Period" of any of the applicable policies; (2) the claimed damages in the underlying class action lawsuit do not constitute a "loss" under the applicable policies; (3) the alleged wrongdoings by AAC in the underlying class action lawsuit do not constitute "wrongful acts" for which coverage is owed under the applicable policies; (4) Plaintiffs have no coverage obligations for wrongful acts committed by AAC prior to the appliable policies' "retroactive date"; (5) numerous policy exclusions apply to limit or preclude coverage; and (6) AAC provided late notice to Plaintiffs of the class action lawsuit in violation of the policy conditions. Plaintiffs have also raised a seventh count in their Complaint seeking to rescind the AAC's insurance policies for misrepresentations in the application.

The first three counts alleged by Plaintiffs in their Complaint each relate to whether AAC's claim satisfies the general requirements for coverage under the Policies. As stated in the Complaint, Plaintiffs issued to AAC as Named Insured three policies applicable to the underlying class action suit bearing Policy Nos. SUA WS20318-2103, SUA WS20318-2002, and SUA WS20318-19012 (hereinafter, the "Policies"). The Policies have collective effective dates of March 1, 2019 to March 1, 2023. Under Kansas law, AAC bears the burden to prove coverage exists under the applicable policies; however, Plaintiffs bear the burden to show exclusions apply. *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F.Supp.2d 1164, 1176 (D. Kan. 2012) (citing *Shelter Mut. Ins. Co. v. Williams*, 804 P.2d 1374, 1382 (Kan. 1991)). The Policies each contain nearly identical Insuring Agreements, which provide as follows:

> The Company will pay on behalf of the **INSURED** [sic] **LOSS** in excess of the Retention stated in Item 4 of the Declarations which the **INSURED** shall become legally obligated to pay as a result of any **CLAIM** first made against the **INSURED** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 of the Declarations.[1]

---

[1] Policy No. SUA WS20318-2103 also requires a **CLAIM** to first be made against the **INSURED** "before March 01, 2022."

AAC possesses a meritorious argument that coverage is owed under the Policies' Insuring Agreements for potential damages arising out of the underlying class action lawsuit.

Specifically, AAC has made a claim to Plaintiffs for liability coverage arising out of the underlying class action lawsuit. AAC undoubtedly qualifies as an **INSURED** under the Policies as it is the entity listed on the Declarations. With this, AAC is seeking coverage for a **LOSS** as that term is defined under the Policies. The Policies define a **LOSS** to mean "money damages, settlements, and **DEFENSE COSTS**." This is precisely what AAC is seeking coverage for in the underlying lawsuit. Plaintiffs appear to take the position in their Complaint that Nichols' claim for monetary damages in the underlying class suit do not satisfy the definition of **LOSS** because the class seeks punitive damages and statutory damages under the Uniform Commercial Code. This is incorrect. To be clear, a final judgment has not yet been entered in the underlying class action; thus, the nature of any potential damages remains unknown. The parties may ultimately settle the underlying action which would not implicate either the punitive damages or the civil penalties exclusion.

Further, the damages sought by Nichols and the class members in the underlying class action are not "civil fines or penalties imposed by law."[2] To the contrary, they are a form of compensatory monetary damage that happens to be prescribed by statute. *Carpenter, Weir & Myers v. St. Paul Fire & Marine Ins. Co.*, Case No. 198 WL 976309 *11 n.2 (D. Kan. Oct. 30, 1998); *Columbia Cas. Co. . HIAR Holding, L.L.C.*, 411 S.W.3d 258, 266–69 (Mo. banc 2013) (holding statutory damages in a Telephone Consumer Protection Act did not constitute as a civil fine or penalty for purposes of liability insurance coverage). In this same vein, Eugene Nichols alleged in his First Amended Counterclaim in the underlying class action that both he and the

---

[2] The Policies do not define the terms "civil fines or penalties" nor do Plaintiffs' provide any such definition in their Complaint.

unnamed class members have suffered various forms of actual damages as a result of AAC's purported UCC violations, which form the basis for their claim for UCC statutory damages, including: (1) loss of use of tangible property and cost of alternative transportation; (2) loss resulting from the inability to obtain, or increased costs of, alternative financing (3) harm to credit worthiness, credit standing, credit capacity, character, and general reputation; (4) harm caused by defamation, slander and libel; (5) harm caused by invasion of privacy; and (6) other uncertain and hard-to-quantify actual damages. (*See* Underlying First Amended Counterclaim, ¶ 75, attached hereto as Exhibit E). Plaintiffs also make no allegations in their Complaint that **DEFENSE COSTS** are not owed to AAC. At the very least, AAC possesses a meritorious argument that any damages that may ultimately be awarded to Nichols and the underlying class members through either a judgment or settlement will constitute a **LOSS** under the Policies.

With this, the **CLAIM** at issue was first made against the **INSURED** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date. Here, the claims for those unnamed class members to whom coverage applies under the Policies were not brought before the trial court for consideration until a class was certified on August 9, 2022. This granting of class certification occurred during the **POLICY PERIOD** at which point AAC notified Plaintiffs of same. AAC is only seeking coverage from Plaintiffs for those purported UCC violations which occurred after the Policies' Retroactive Date.

Further, the class claims in the underlying lawsuit constitute a **WRONGFUL ACT** under the Policies. Specifically, Nichols alleges in his First Amended Counterclaim in the underlying lawsuit that AAC violated various provisions of the UCC which form his basis for class statutory damages under § 400.9-625. However, Nichols also explicitly states that "AAC did not intend to violate RSMo § 408.553 or any of the statutes under the UCC." (*See* Ex. E, ¶ 85). This allegation

makes clear that the class claims are based upon purported negligent error or omission in preparing the pre-sale and post-sale notices at issue in the underlying litigation. With this, Plaintiffs claim that the underlying lawsuit does not arise "with respect to automobile loan origination or automobile loan servicing" is incorrect. AAC financed loans to buyers for the purchase of motor vehicles. AAC subsequently serviced those loans by collecting payment, sending notices to deficient account holders, and repossessing vehicles to recoup their loan funds from deficient buyers. This practice of servicing loans forms the very basis of the underlying class claims relating to pre-sale and post-sale notices for the loans AAC financed for each class member.

Finally, on this point, Plaintiffs claim the general requirements for coverage are not satisfied because the underlying class claims constitute non-covered **INTERRELATED WRONGFUL ACTS**. Plaintiffs, however, do not allege with any specificity what common nexus of "fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions" which would qualify the underlying class claims as uncovered **INTERRELATED WRONGFUL ACTS**. The underlying class claims arise out of pre-sale and post-sale notices mailed to class members after the repossession of motor vehicles. However, the pre-sale notices mailed to class members changed in form and content in December 2019 (i.e., during Plaintiffs' policy period). Thus, in reality, the claims for class members largely in Plaintiffs' period coverage do not share a common set of circumstances as any determination of liability will be different than that of the class representative who first made his claim in 2016.

At the least, AAC has presented a meritorious defense that coverage may exist under the Policies. Based upon this showing, Plaintiffs bear the burden of proving that one or more exclusions will apply to totally preclude coverage for AAC's claims. Plaintiffs have not alleged sufficient facts in their Complaint to satisfy this burden. Further, the underlying class action

#30340410 v1

remains ongoing with no settlement approved by the trial court or final judgment entered. Thus, it cannot be determined for certain what damages Plaintiffs may ultimately be obligated to indemnify on behalf of AAC at this stage in the proceedings. This fact alone indicates making a widespread determination on Plaintiffs' coverage obligations in the underlying lawsuit is inappropriate at this time.

In addition to seeking a declaration based upon the Policies' Insuring Agreements and exclusions, Plaintiffs also allege AAC provided late notice of the class action claims in violation of the policy conditions. Under Kansas law, however, a failure to satisfy a timely notice condition does not bar coverage unless the insurer can show prejudice caused by the delay. *E.g.*, *Home Life Ins Co. v. Clay*, 719 P.2d 756, 288 (Kan. App. 1986); *Travelers Ins. Co. v. Field Car & Truck Leasing Corp.*, 517 F.Supp. 1132, 1134 (D. Kan. 1981); *School Dist. No. 1 of Clark County v. Massachusetts Bonding & Ins. Co.*, 142 P. 1077 (Kan. 1914). The showing of prejudice is a factual question that will require discovery outside of the bare allegations made in Plaintiffs' Complaint which shall be presented to a jury for consideration. *Travelers*, 517 F.Supp. at 1134. Further, Plaintiffs will be unable to show prejudice as the circumstances of the underlying class action litigation and potential damages arising therefrom did not change in anyway as a result of AAC's purported improper delay in reporting the claim. Plaintiffs' ability to contribute to the defense and indemnity of AAC have not changed at any point between the date the underlying trial court entered its Class Certification Order and the present. Thus, Plaintiffs cannot make a showing of prejudice caused by AAC's purported delay and the application of this policy condition is not appropriate.

Finally, Plaintiffs have a raised a claim that the Policies should be rescinded and declared void *ab initio*. In order to successfully rescind a policy ab initio for a fraudulent misrepresentation,

#30340410 v1

Plaintiffs must establish: (1) untrue statement of fact or omission of material fact made by the insured; (2) the insured knew the statement was true; (3) the insured made the statement with intent to deceive or with disregard for the truth; (4) Plaintiffs justifiably relied on the statement; and (5) the false statement contributed to the contingency or event on which coverage is sought. *Chism v. Protective Life Ins. Co.*, 234 P.3d 780, 787 (Kan. 2010) (internal citations omitted). "In cases where the truth of the representations or the facts surrounding the taking of the application are in dispute the questions presented are for a jury's determination." *Schneider v. Washington Nat. Ins. Co.*, 437 P.2d 798, 809 (Kan. 1968). AAC disputes Plaintiffs' claims regarding the truth of the representations and the facts surrounding the taking of the underlying insurance applications. Discovery will need to be completed in order to resolve these disputes, including the deposition of Tom Wood, who filled out the applications on behalf of AAC. This discovery will relate to his understanding of the application and his intention with regard to his answers. Plaintiffs' make no allegations concerning these inquiries, the veracity of which are ultimately up for a jury to decide. Additionally, Nichols (and now the unnamed class members) claims against AAC have been pending since 2016. For this reason, discovery will also need to be conducted to further investigate Plaintiffs' underwriting process and to determine their knowledge of the now certified class claims when the Policies were issued. In all, facts exist to indicate AAC possesses defenses to Plaintiffs' claims that the Policies should be void *ab initio* and rescinded.

In sum, AAC has satisfied its "light" burden to show that, deeming the above facts and circumstances to be true, it can present defenses to Plaintiffs' claims at trial. Thus, AAC has shown that it possesses a meritorious defense and the default should be set aside.

## CONCLUSION

The disposition of disputed claims on their merits is favored over the entry of default judgments. For this reason, Rule 55(c) places authority in this Court to set aside an entry of default when good cause is shown. The facts demonstrate (1) that the entry of default against AAC was not the result of its own culpability, (2) Plaintiffs will not be prejudiced by setting aside the entry of default, and (3) AAC possesses meritorious defenses at this early stage of the litigation even without the benefit of discovery. Thus, AAC has satisfied its burden to show good cause and the entry of default should be set aside.

WHEREFORE, Defendant Automobile Acceptance Corporation, Inc., hereby requests this Court enter an order setting aside the entry of default, grant it leave to file a responsive pleading out of time, and for any further relief this Court deems just and proper under the circumstances.

Respectfully submitted,

**Monsees & Mayer, PC**
*/s/ Timothy W. Monsees*
Timothy W. Monsees MO#31004
4717 Grand Avenue, Suite 820
Kansas City, MO 64112
Telephone: (816) 361-5500
Facsimile: (816) 361-5577
tmonsees@monseemayer.com
***Attorneys for Defendant***

#30340410 v1