

KARBAL | COHEN | ECONOMOU | SILK | DUNNE
200 S. WACKER DR., SUITE 2550
CHICAGO, ILLINOIS 60606

**DOUGLAS R. GARMAGER**
Direct: 312.431.3648
Fax: 312.431.3670
dgarmager@karballaw.com

January 9, 2023

**_Via E-Mail and Federal Express_**
(tmonsees@monseesmayer.com)

AUTOMOBILE ACCEPTANCE CORPORATION INC.
c/o Timothy W. Monsees, Esq.
Monsees & Mayer, P.C.
4717 Grand Avenue – Suite 820
Kansas City, MO  64112

Re:   *Automobile Acceptance Corp. (Plaintiff/Counterclaim-Defendant) v. Eugene Jerome Nichols (Defendant/Counterclaim-Plaintiff),* Case No. 15CY-CV07631
|  |  |
|---|---|
| Insured: | Automobile Acceptance Corporation Inc. |
|  | Kansas City, Kansas |
| Claimant: | Eugene Jerome Nichols |
| Certificate No.: | SUA WS20318-2103 (Professional Liability Policy) |
| Policy Period: | March 1, 2021-March 1, 2023 |
|  | (per Extended Reporting Period) |
| Our File No.: | 260-171 |

Dear Mr. Monsees:

As you know, this firm represents the interests of those certain Underwriters at Lloyd's, London and those certain insurers ("Underwriters") subscribing to the above-referenced Mortgage Company Professional Liability Policy ("the Policy") in connection with the above-referenced matter.[1]  Underwriters issued the Policy in favor of Automobile Acceptance Corporation Inc. ("AAC"). As you are also aware, we do not represent AAC.

On behalf of Underwriters, we wish to acknowledge our receipt of your December 30, 2022 letter regarding this matter.  As we understand the position articulated in that letter, you

---

[1] Please note that we also represent Underwriters with respect to the Mortgage Company Professional Liability Policies issued previously to AAC through Stateside Underwriting Agency: SUAWS20318-1901 (effective March 1, 2019-March 1, 2020) and SUAWS20318-2002 (effective March 1, 2020-March 1, 2021). These may sometimes be referred to herein as "the Earlier Policies."

3234459

Automobile Acceptance Corp.
c/o Timothy W. Monsees, Esq.
January 9, 2023
Page 2 of 12



assert that: (1) the First Amended Answer and Counterclaim ("FAC"), when filed in 2016, contained a "single claim by Eugene Nichols" and (2) did not make any of the class claims until the class was certified on September 30, 2022.

Underwriters respectfully disagree with your assertion. Even if one were to assume, for the sake of discussion, that the class members' claims were not made against AAC until the class was certified, Underwriters point out that Section V.C. of the Policy provides as follows:

> C.   MULTIPLE INSUREDS, CLAIMS OR CLAIMANTS
>
> The inclusion herein of more than one **INSURED** or the making of **CLAIM(S)** by more than one person or organization shall not operate to increase the Company's Limit of Liability. **CLAIM(S)** arising out of a single **WRONGFUL ACT**, or **INTERRELATED WRONGFUL ACTS**, shall be treated as a single **CLAIM**, and such single **CLAIM** shall be considered first made:
>
> 1. when the earliest **CLAIM** within such single **CLAIM** was first made, or
> 2. when notice was first given under any policy of insurance of any **WRONGFUL ACT** or any matter, fact, circumstance, situation event or transaction that underlies any **CLAIM** within such single **CLAIM**,
>
> and all such **CLAIM(S)** shall be subject to the same Limit of Liability.

Section III.G. defines "INTERRELATED WRONGFUL ACTS" as follows:

> G.   **"INTERRELATED WRONGFUL ACTS"** means **WRONGFUL ACTS** that have as a common nexus any fact, circumstance, situation, event or transaction or series of facts, circumstances, situations, events or transactions.

It is clear on the face of the FAC that, at the very least, the claims of the class certified by the Court on September 30, 2022 and the claims of Nichols constitute "**INTERRELATED WRONGFUL ACTS.**" Therefore, by operation of Section V.C. of the Policy, Nichols' claims and the class claims represent one single "**CLAIM**," which was first made when AAC received the FAC on August 8, 2016.

By way of example, and without limitation, Underwriters note that the FAC alleges that:

1. "Nichols' and the classes' claims are based on the same factual and legal theories." (FAC ¶ 48)
2. "Nichols and each class member will rely on the same basic evidence (i.e., the form notices)." (FAC ¶ 59)

3234459



3. "AAC's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because AAC sent the same noncompliant post-sale notice to Nichols and the Class." (FAC ¶ 74)

There are numerous other allegations in the FAC that would underscore the same point.

In fact, this conclusion is further reinforced by the Order for Class Certification ("the Order")[2], *upon which your argument relies*. In the Order, the Court ruled that the typicality requirement for class certification was met as "Nichols' claims arise from the same event or course of conduct of AAC affecting the potential class members . . . " (Order at p. 10) Indeed, later in the Order, the Court concluded that "Nichols and the class seek the same form of relief for the same alleged conduct." (Order at p. 12)

In view of the foregoing, Underwriters disagree with your position that the class portion of the FAC represents a **CLAIM** first made during the Policy. It is clear that, by operation of Section V.C. of the Policy, Nichols' claims and the class claims represent one single "**CLAIM**," which was first made when AAC received the FAC on August 8, 2016. Accordingly, the Insuring Agreement of the Policy has not been triggered because this matter is not a "**CLAIM** first made against the **INSURED** during the **POLICY PERIOD**."

Additionally, Underwriters note that there is no coverage for this matter for the separate and independent reason that coverage is excluded under Section IV.O. of the Policy, which provides:

> IV.     **EXCLUSIONS**
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> \*\*\*
>     O.     based upon or directly or indirectly arising out of or resulting from any actual or alleged:
>
>> 1.     **WRONGFUL ACT** or matter, fact, circumstance, situation, event or transaction that has been the subject of any claim made prior to the inception of this Policy or of any notice given during any prior policy;
>> 2.     **WRONGFUL ACT** which, together with a **WRONGFUL ACT** that has been the subject of any claim or notice identified in O.1. above, would constitute **INTERRELATED WRONGFUL ACTS**; or
>> 3.     Matter, fact, circumstance, situation, event or transaction known to an **INSURED** prior to the Coverage Date set forth in Item 7 of the Declarations if such matter, fact or circumstance would cause

---

[2] Underwriters are aware that the Order has been amended, but those amendments are not germane to the coverage discussion.

Automobile Acceptance Corp.
c/o Timothy W. Monsees, Esq.
January 9, 2023
Page 4 of 12



> a reasonable person to believe that a **CLAIM** for a **WRONGFUL ACT** may be made;

For the reasons explained above, Nichols' claims and the class claims involve "**INTERRELATED WRONGFUL ACTS,**" and therefore represent one single "**CLAIM**," which was first made when AAC received the FAC in 2016. Also, the materials provided with AAC's notice to Underwriters on December 15, 2022 include an email from AAC's insurance broker to Auto-Owners Insurance dated August 8, 2016, providing notice of the FAC to Auto-Owners Insurance as of that date. The exclusions in Section IV.O.1. and IV.O.2. thus bar coverage for this matter.

Likewise, the exclusion in Section IV.O.3. bars coverage for this matter because AAC indisputably knew as of the Policy's Coverage Date of March 1, 2019 of a "[m]atter, fact, circumstance, situation, event or transaction" that would cause a reasonable person to believe that a **CLAIM** for a **WRONGFUL ACT** may be made: namely, a putative class action lawsuit that had been pending against it since 2016. The FAC is therefore not a fortuitous loss under the Policy.

Additional Policy terms, conditions, and exclusions also appear to apply to this matter.

<u>First</u>, Underwriters reserve rights, without limitation, with respect to the Policy's March 1, 2019 Retroactive Date. The Insuring Agreement of the Policy (as modified by the ERP Endorsement) provides:

> **I.   INSURING AGREEMENT**
> The Company will pay on behalf of the **INSURED LOSS** in excess of the Retention stated in Item 4 of the Declarations which the **INSURED** shall become legally obligated to pay as a result of any **CLAIM** first made against the **INSURED** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 and before March 1, 2022.[3]

Here, the FAC was filed in 2016 and alleged, as of that date, that AAC had sent defective pre- and post-sale notices to Nichols and class members. In light of such, it is clear that, to the extent **WRONGFUL ACTS** have been alleged to have been committed against Nichols and the class members, such necessarily include **WRONGFUL ACTS** that occurred prior to the Policy's March 1, 2019 Retroactive Date. Accordingly, Underwriters reserve rights to deny coverage for

---

[3] The Insuring Agreement of the Earlier Policies similarly provides:

> **I.   INSURING AGREEMENT**
> The Company will pay on behalf of the **INSURED LOSS** in excess of the Retention stated in Item 4 of the Declarations which the **INSURED** shall become legally obligated to pay as a result of any **CLAIM** first made against the **INSURED** during the **POLICY PERIOD** for a **WRONGFUL ACT** that occurred on or after the Retroactive Date stated in Item 6 of the Declarations.

3234459



any **WRONGFUL ACT** that occurred prior to the March 1, 2019 Retroactive Date or after March 1, 2022.

<u>Second</u>, Underwriters reserve rights, without limitation, with respect to the definition of a **WRONGFUL ACT**, which is defined as follows:

> B. **"WRONGFUL ACT"** means any actual or alleged negligent act, negligent error or negligent omission committed by the **INSURED** solely in the performance of or failure to perform professional services for others in the **INSURED'S** Profession as stated in Item 1.A. of the Declarations.

The FAC alleges that AAC engaged in conduct that was deceptive, "wanton, outrageous, and/or malicious" and exhibited "reckless indifference to or conscious disregard of the consumer rights of Nichols and the Missouri Subclass." Further, the FAC makes reference to defamation, slander, and libel of Nichols and the class members, as well as invasion of Nichols' and the class members' privacy rights. Underwriters therefore reserve rights to deny coverage to the extent the FAC does not involve an actual or alleged negligent act, negligent error, or negligent omission committed by an Insured.

Further, with reference to the FAC's repeated allegations that AAC repossessed property of Nichols and the class members and reported derogatory information on their credit reports, Underwriters reserve rights to deny coverage to the extent that the FAC does not involve an actual or alleged negligent act, negligent error, or negligent omission committed by an Insured solely in the performance of or failure to perform professional services for others in AAC's profession of "AUTOMOBILE LOAN ORIGINATION; AUTOMOBILE LOAN SERVICING," and therefore does not meet the definition of a "**WRONGFUL ACT**" so as to engage coverage under the Insuring Agreement.

<u>Third</u>, Underwriters reserve rights, without limitation, with respect to the exclusion in Section IV.G. of the Policy, which states:

> IV. EXCLUSIONS
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> ***
> G. based upon or directly or indirectly arising out of or resulting from any actual or alleged (1) false arrest, malicious prosecution, abuse of process, false detention or false imprisonment; (2) assault and battery; (3) libel, slander or defamation of character; (4) wrongful entry or eviction; or (5) invasion of any right of privacy.

As noted above, the FAC alleges that AAC reported false or derogatory information on Nichols' and the class members' credit reports and that such constituted "oral or written publication of material that defames, slanders or libels the class members." Further, the FAC alleges that AAC's reports of false or derogatory information on Nichols and the class members' credit

3234459



reports constituted "oral or written publication of material that invaded the class members' privacy rights." Additionally, the FAC alleges "harm to credit worthiness, credit standing, credit capacity, character, and general reputation" of Nichols and/or the class members. Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** that involves false arrest, malicious prosecution, abuse of process, false detention or false imprisonment, assault and battery, libel, slander or defamation of character, wrongful entry or eviction, or invasion of any right of privacy.

<u>Fourth</u>, Underwriters reserve rights, without limitation, with respect to the exclusion in Section IV.C. of the Policy, which states:

> IV. **EXCLUSIONS**
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> \*\*\*
> C. based upon or directly or indirectly arising out of or resulting from any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease, or death, including but not limited to loss of consortium or services, or any actual or alleged damage to or loss of or destruction of any tangible property, including loss of use thereof;

The FAC alleges that, due to the acts of AAC, Nichols and the class members have suffered the "loss of use of tangible property." Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** based upon or directly or indirectly arising out of or resulting from any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease, or death, including but not limited to loss of consortium or services, or any actual or alleged damage to or loss of or destruction of any tangible property, including loss of use thereof.

<u>Fifth</u>, Underwriters reserve rights, without limitation, with respect to the exclusions in Sections IV.A. and IV.B. of the Policy, which state:

> IV. **EXCLUSIONS**
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> \*\*\*
> A. based upon or directly or indirectly arising out of or resulting from an **INSURED** gaining in fact any personal profit or advantage to which the **INSURED** is not legally entitled;
>
> B. that results in a judgment or final adjudication that any **INSURED** has committed any criminal, dishonest, intentionally malicious, or fraudulent act, error or omission.
>
> However, any **WRONGFUL ACT** pertaining to any of the **INSUREDS** shall not be imputed to any other person for the purposes of determining the applicability of Exclusions A. and B;

3234459



As noted above, the FAC alleges that AAC engaged in conduct that was deceptive, "wanton, outrageous, and/or malicious" and exhibited "reckless indifference to or conscious disregard of the consumer rights of Nichols and the Missouri Subclass." Further, the crux of the FAC is that ACC has unlawfully repossessed and sold collateral without giving proper notices and has also unlawfully collected interest from Nichols and the class members. Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** based upon or directly or indirectly arising out of or resulting from an **INSURED** gaining in fact any personal profit or advantage to which the **INSURED** is not legally entitled; or that results in a judgment or final adjudication that any **INSURED** has committed any criminal, dishonest, intentionally malicious, or fraudulent act, error or omission.

<u>Sixth</u>, Underwriters reserve rights, without limitation, with respect to the exclusion in Section IV.M. of the Policy, which states:

> IV.    EXCLUSIONS
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> \*\*\*
> M.    based upon or directly or indirectly arising out of or resulting from any actual or alleged unfair competition, interference with contract or violation of anti-trust laws;

The FAC alleges that the conduct of AAC involves "ongoing unfair, unlawful, or deceptive business practices." Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** based upon or directly or indirectly arising out of or resulting from any actual or alleged unfair competition, interference with contract or violation of anti-trust laws.

<u>Seventh</u>, Underwriters reserve rights, without limitation, with respect to the exclusion in Section IV.J. of the Policy, which states:

> IV.    EXCLUSIONS
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> \*\*\*
> J.    seeking relief or redress in any form other than money damages including but not limited to **CLAIM(S)** for injunctive relief in any form whatsoever and including disciplinary proceedings;

The FAC is replete with requests for injunctive and/or declaratory relief, including, without limitation, requests for: an injunction preventing AAC from engaging in the practices alleged, including collecting deficiency judgments, time price differential, and delinquency and collection charges; an injunction compelling AAC to return any money collected for deficiency judgments, time price differential, and delinquency and collection charges; an injunction compelling AAC to



remove any adverse credit information wrongfully reported on Nichols and the class members' consumer credit reports; and a declaration that the right to cure, pre-sale, and post-sale notices sent by AAC to Nichols and the class members fail to comport with statutory requirements. Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** seeking relief or redress in any form other than money damages including but not limited to **CLAIM(S)** for injunctive relief in any form whatsoever and including disciplinary proceedings.

Eighth, Underwriters reserve rights, without limitation, with respect to the exclusion in Section IV.N. of the Policy, which states:

> IV. EXCLUSIONS
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> ***
> N. to the extent that there is coverage under any other existing valid policy or policies, whether such other insurance is stated to be contributory, excess, contingent or otherwise and regardless of whether or not such **LOSS** is collectible or recoverable under such other insurance; provided, however, that this exclusion shall not apply to any **LOSS** in excess of the retention and limit of liability of such other policy or policies where such **CLAIM** is otherwise covered under the terms of this Policy

Underwriters have been provided with information that Auto-Owners Insurance company was placed on notice of the FAC on August 8, 2016 and is providing a defense to the FAC. Please therefore provide copies of all notices provided to any insurers in connection with the FAC and any correspondence received in response from such insurers, including Auto-Owners Insurance. In the meantime, Underwriters' reservation of rights includes the right to limit or deny coverage in accordance with the above-quoted exclusion set forth in Section IV.N. of the Policy.

Ninth, Underwriters reserve rights, without limitation, with respect to the exclusion in Section IV.BB. of the Policy, which states:

> IV. EXCLUSIONS
>
> This Policy does not apply to **LOSS** in connection with any **CLAIM**:
> ***
> BB. based upon or directly or indirectly arising out of or resulting from any actual or alleged (1) non-disclosure, concealment, misrepresentation, misstatement or falsification of any terms of a loan, or of any rights or information required to be disclosed or revealed under TILA; or (2) improper, excessive, illegal, or unauthorized fees, penalties or costs, including but not limited to prepayment penalties. The term "TILA" means, for purposes of this Exclusion, the Truth-in-Lending Act of 1968, Title I of the Consumer Credit Protection Act as amended (15 USC § 1601 et seq.) or Regulation Z (12 CFR Part 226);


The FAC alleges that AAC has unlawfully collected or attempted to collect interest accruing after default and before judgment from Nichols and the class members, and further, that AAC has unlawfully collected or attempted to collect deficiency balances, time price differential, and delinquency and collection charges based on defective pre- and post-sale notices. Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** based upon or directly or indirectly arising out of or resulting from any actual or alleged (1) non-disclosure, concealment, misrepresentation, misstatement or falsification of any terms of a loan, or of any rights or information required to be disclosed or revealed under TILA; or (2) improper, excessive, illegal, or unauthorized fees, penalties or costs, including but not limited to prepayment penalties.

Tenth, Underwriters reserve rights, without limitation, with respect to the definition of **LOSS**, which is defined by the Policy as follows:

> **III. DEFINITIONS**
> ***
> C. **"LOSS"** means money damages, settlements, and **DEFENSE COSTS.** **LOSS** shall not include:
> 1. punitive or exemplary damages or the multiplied portion of a multiplied damages award
> 2. criminal or civil fines or penalties imposed by law;
> 3. taxes;
> 4. matters that may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

The FAC seeks numerous forms of relief that do not constitute **LOSS**, including, without limitation, punitive damages; apparent statutory penalties; and injunctive relief. Accordingly, Underwriters reserve the right to limit or deny coverage for any amounts that do not constitute **LOSS** as defined by the Policy.

Eleventh, Underwriters reserve rights, without limitation, with respect to the Policy's Notice requirements set forth in Section VI.A., which state:

> **VI. NOTICE AND LOSS PROVISIONS**
>
> A. As a condition precedent to the availability of the rights provided under this Policy, the **INSURED** shall give written notice to the Company of any **CLAIM** made against the **INSURED** as soon as practicable, but in no event later than sixty (60) days after the date such **CLAIM** is first made.
>
> * * *
>
> C. The notifications provided for above shall be made to the party set forth in Item 8 of the Declarations.

3234459

Automobile Acceptance Corp.
c/o Timothy W. Monsees, Esq.
January 9, 2023
Page 10 of 12



\* \* \*

As noted above, Nichols' claims and the class claims involve "**INTERRELATED WRONGFUL ACTS,**" and therefore represent one single "**CLAIM**," which was first made when AAC received the FAC on August 8, 2016. Notice of this **CLAIM**, however, was not provided to Underwriters until December 15, 2022—over six years (or 2,320 days) later. AAC has thus clearly breached the notice requirements of Section VI.A. by failing to give notice of this **CLAIM** as soon as practicable, but in no event later than sixty (60) days after the date such **CLAIM** was first made. Accordingly, Underwriters reserve the right to deny coverage for this **CLAIM** due to AAC's breach of the above-quoted notice requirements of Section VI.A. of the Policy.

Twelfth, Underwriters reserve rights, without limitation, with respect to the "Exclude Services Endorsement" of the Policy, which states:

**EXCLUDE SERVICES ENDORSEMENT**

To be attached to and form part of Policy Number: **SUAWS20318-2103**

In favor of: **AUTOMOBILE ACCEPTANCE CORPORATION INC**

In consideration of the premium charged, it is understood and agreed that the Policy does not apply to LOSS in connection with any CLAIM directly or indirectly based upon or arising out of or resulting from the providing of or failing to provide the professional services described below:

AUTOMOBILE SALES; REPOSSESSION SERVICES

The effective date of this endorsement is March 1, 2021.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

A37    1125644.1[4]

The FAC alleges that AAC unlawfully repossessed and disposed of Nichols and the class members' collateral because AAC failed to provide proper pre- and post-sale notices. Accordingly, Underwriters reserve the right to deny coverage for **LOSS** in connection with any **CLAIM** directly or indirectly based upon or arising out of or resulting from the providing of or failing to provide the professional services of AUTOMOBILE SALES or REPOSSESSION SERVICES.

Thirteenth, Underwriters reserve the right to rescind Policy Nos. SUAWS20318-1901 (effective March 1, 2019-March 1, 2020), SUAWS20318-2002 (effective March 1, 2020-March

---

[4] This same exclusion is included in substantially similar format in the Earlier Policies.

Automobile Acceptance Corp.
c/o Timothy W. Monsees, Esq.
January 9, 2023
Page 11 of 12



1, 2021), and SUAWS20318-2103 (effective March 1, 2022 – March 21, 2022). Each of these policies was issued by Underwriters in reliance on AAC's representation that neither the applicant, nor any predecessor in business, nor any of the past or present partners, Officers, Directors, or employees had any reasonable basis to believe that the applicant or any predecessor in business or any of the past or present partners, Officers, Directors or employees were aware of any circumstances, incidents, or situations during the past five years which have resulted or which may result in claims being made against the applicant, any of the past or present partners, Officers, Directors or employees or former employees of the applicant. The FAC establishes that there was an actual claim already in suit, which was known to AAC, at the time these applications were completed without disclosing that existing claim.

Section VII.A. of the Policy and the Earlier Policies states as follows:

**VII.   GENERAL CONDITIONS**

    **A.    APPLICATIONS**

By acceptance of this Policy, all **INSUREDS** agree as follows:

1. The particulars and statements contained in the application, a copy of which is attached hereto, and any materials submitted therewith (which are on file with the Company and are deemed attached hereto, as if physically attached hereto) are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

2. the statements in the application and in any materials submitted therewith are the **INSUREDS'** representations and shall be deemed material to the acceptance of the risk or the hazard assumed by the Company under this Policy and this Policy is issued in reliance upon the truth of such representations;

3. in the event the application, including materials submitted therewith, contains any misrepresentation made with the actual intent to deceive or contains any misrepresentation that materially affects either the acceptance of the risk or the hazard assumed by the Company under this Policy, this Policy shall be void in its entirety and of no effect whatsoever; and

4. this Policy shall be deemed to be a single unitary contract and not a severable contract of insurance or a series of individual contracts of insurance with each of the **INSUREDS**.

Based on AAC's non-disclosure of a known claim on its Policy applications for Policy Nos. SUAWS20318-1901, SUAWS20318-2002, and SUAWS20318-2103, Underwriters expressly reserve the right to rescind such policies.

Automobile Acceptance Corp.
c/o Timothy W. Monsees, Esq.
January 9, 2023
Page 12 of 12



      There may be other provisions of the Policy that may impact coverage with respect to this matter, and the foregoing shall not be construed to waive or restrict Underwriters from raising any and all other Policy provisions, coverage issues or defenses to coverage under the law and/or the Policy. Accordingly, Underwriters fully and completely reserve all of their rights, remedies and defenses under the law and the Policy, including, but not limited to, those matters discussed in our previous correspondence. Underwriters also expressly note that all coverage statements and reservations of rights stated herein apply equally with respect to both the Policy and the Earlier Policies.

      Thanks, and best regards.

      Very truly yours,

      KARBAL, COHEN, ECONOMOU, SILK & DUNNE

      *Douglas R. Garmager*

      By: Douglas R. Garmager

cc:    J.P. Assouad, Esq. (via email: jean-paul.assouad@kutakrock.com)

      Meredith Webster, Esq. (via email: meredith.webster@kutakrock.com)

      Stateside Underwriting Agency
      (By E-Mail) (claims@statesideunderwriting.com)

      Ms. Valerie Valentine
      Cochrane & Company
      (By E-Mail) (vvalentine@cochraneco.com)

3234459